Glider et ux., Appellants, *v.* Commonwealth, Department of Highways.

142

Argued May 8, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Lewis Kates,* for appellants.

*Alexander V. Sarcione,* Assistant Attorney General, with him *Francis P. Cadran,* Special Assistant At-

torney General, and *William C. Sennett,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, June 27, 1969:

Leon Glider and his wife, Claire, were the owners of Philadelphia realty which was condemned by the Department of Highways of the Commonwealth of Pennsylvania for highway construction purposes. A Board of View was appointed on the petition of the condemnees. Subsequently, on application of the condemnees for the payment of estimated just compensation, the Commonwealth paid them the sum of $10,-500. Later the Board of View made an award to the condemnees of $12,500, plus detention damages. The condemnees filed an appeal from the award in the Court of Common Pleas. After trial the jury found in favor of the Commonwealth and awarded no damages. A motion for a new trial by the condemnees was dismissed by the court en banc and after judgment was entered on the verdict, this appeal was filed.

The condemnation involved the taking of 7866 square feet of premises consisting of 11,036 square feet which, prior to the condemnation on May 29, 1967, were improved with a five-story one hundred year old building which had been used by the appellants-condemnees as a candy factory. The premises did not abut on any street and the only access thereto was by way of a private alley used in common with four others. On January 23, 1967, some four months prior to the filing by the Commonwealth of the Declaration of Taking, the premises were badly damaged by fire. Subsequent to the fire, the condemnees never resumed the candy manufacturing business, although they claimed that some repairs were made prior to the condemnation and that the building could be repaired and restored to a condition rendering it again usable as a candy manufacturing plant. The Commonwealth contended,

however, that the entire building was in such a damaged state that it was structurally unsound and unusable, and that the cost of repairing it was so economically impractical that the building would have to be demolished.

At trial, the condemnees presented expert testimony that the premises, although damaged by fire as of the date of condemnation, were structurally sound and still usable as a candy manufacturing facility and that its value for such use, including the machinery, equipment and fixtures forming part of the real estate, was $209,251. The condemnees' expert testimony concluded that that which remained after condemnation was a landlocked parcel having a value of $500. The value of $209,251 was apportioned at $157,700 for the building and $40,551 for machinery and equipment.

The condemnor's expert testimony was that the improvements, because of the fire, had no economic value or utility whatsoever and that the value of the land before the taking was $10,500 and the value of the land remaining after the taking was $500 resulting in damages of $10,000. To this was added a scrap value of $500 for the machinery and equipment making a net damage of $10,500. The Commonwealth's *machinery and equipment valuation* expert testified that the scrap or salvage value of $500 was what a demolition contractor would give as a credit against what he charged for demolition of the condemned premises. The Commonwealth's *real estate valuation* expert who fixed the value of the premises as land only before condemnation at $10,500 testified on direct examination that though he considered the cost of demolition he did not *"use* that as a consideration because if [he] did the [condemnees] would get nothing." Under cross-examination by counsel for condemnees he testified further on this matter as follows: "Q. Mr. Meltzer,

in your before value, you gave a price of $10,500.00, is that not correct? A. Yes. Q. What portion of that, if any did you attribute to the real estate, the building? A. The land, I will repeat, there was 11,037 square feet of land at ninety-five cents a square foot; that came to $10,500.00. The cost of demolishing the building would have been $11,000.00. I did not subtract that from the land value. In other words, any buyer would have had to pay $11,000.00 to knock down the building, and I felt to take that off, to recognize the building at that point, would have allowed the owner no compensation, and I felt the owner, since this was a condemnation, was entitled to compensation in spite of, let's say, the textbook approach."

It was stipulated of record that the Commonwealth had paid the condemnees $10,500 as its estimate of just compensation in accordance with §407 of the Eminent Domain Code, Act of June 22, 1964 (Spec. Sess.), P. L. 84, 26 P.S. §1-407, but the jury was unaware of this payment.

It is admitted that after the effective date of the condemnation, the condemnees, without prior permission of the Commonwealth, permitted their son to remove the machinery and equipment. The condemnees' machinery and equipment valuation expert testified that the fair market value of the removed machinery and equipment in place unaffected by the condemnation was $27,369 and that the value thereof severed from the real estate was $2,280.

The condemnees seek a new trial on the grounds that the verdict was against the evidence, was against the weight of the evidence and because of alleged errors committed by the trial judge in his rulings.

The condemnees contend that the verdict of no damages cannot stand inasmuch as the evidence presented by the Commonwealth itself, uncontroverted by any of its witnesses, shows that the damages result-

ing from the condemnation was $10,500. Unlike the rule followed in some other jurisdictions, the rule in Pennsylvania is that the verdict of a jury in a condemnation proceeding may be below the lowest market value testified to by the condemnor's own valuation expert. The opinion testimony of an expert valuation witness is not so far vouched for by the party calling him that he is bound thereby, if the burden of proof on the issue of damages is on the other party. *Ray, to use, v. Philadelphia*, 344 Pa. 439, 25 A. 2d 145 (1942). A jury may believe all or part or none of the testimony of any witness though it may not disregard evidence as to property values and substitute its own ideas. *Morrissey v. Department of Highways*, 424 Pa. 87, 225 A. 2d 895 (1967).

In the instant case, the burden of proving damages was on the condemnees, not the condemnor. It was the prerogative of the jury to decide what evidence it would credit and what it would reject. The jury by its verdict rejected in toto the evidence as to damages presented by the condemnees. And under the rule enunciated in *Ray*, supra, it was not bound to accept in toto the opinion testimony as to value presented by the condemnor. Nor can it be said that the verdict of the jury was capricious or not rationally related to any evidence because the jury rejected in toto the condemnor's evidence of damages in the sum of $10,500, since the same valuation expert who testified to damages of $10,500 qualified his opinion by stating that the cost of demolishing the building which was not repairable would be $11,000, or more than the value of the land without any building. The jury therefore could accept the testimony of the Commonwealth that (1) the building was worthless and so damaged by the fire that it was a burden on the land in that its razing was necessary, (2) that the machinery, equipment and fixtures had a scrap or

salvage value of only $500, and (3) that the cost of razing the building and clearing away the debris was $11,000. There was, therefore, evidence in the record to sustain a finding by the jury that as of the date of condemnation, the premises as a whole had no market value because of the effects of the fire and that the condemnees, therefore, suffered no damages.

The condemnees complain that the trial judge erred in many of his rulings. Mr. Meltzer, the condemnor's real estate valuation expert, was asked both on direct and cross-examination what factors he considered in arriving at his opinion as to value. In the enumeration of those factors, he stated that he considered the amount of fire insurance carried on the premises and the fact that the Insurance Companies paid to the condemnees 100% of the amount of insurance carried on the building. The witness made no mention of the specific amount of insurance carried or of the specific amount paid for the fire loss. He explained that while this was not the *basis* of his conclusion that the building was worthless, it served to reinforce his conclusion. The condemnees objected to this testimony and moved for the withdrawal of a juror which was denied by the trial judge. The condemnees contend that the amount of insurance carried on a building and paid by the insurance company for its loss resulting from a fire is not substantive evidence of its value in a condemnation proceeding where land as well as buildings are elements of value. This contention might be tenable if the issue in the case involved the value of the building as it existed *before* the fire instead of the issue in fact involved which was the value of the building in its condition as it existed on the date of condemnation, which date was *after* the fire. The witness had testified that because of the fire the building was rendered worthless, indeed that its existence in its damaged state was a burden on the land.

The purport of his testimony that the condemnees had accepted payment for a total destruction of the building was to confirm his conclusion and opinion of worthlessness and, in addition, to impeach the claim of the condemnees that the building was not a total loss but could be repaired and restored to its former use as a candy manufacturing plant. This evidence tended to contradict the evidence of value given by the condemnees and was, therefore, at least relevant for purposes of impeachment even though it be conceded, arguendo, that it was not *substantive* evidence of value. It was within the knowledge of the condemnees whether the facts were other than as testified to by the witness. Having deliberately chosen not to controvert the testimony of full payment of full insurance coverage or to offer any explanatory evidence to rebut any unfavorable inference arising therefrom, the condemnees have no grounds for complaint.

The condemnees contend that the trial judge erred in instructing the jury that since the condemnees permitted the removal of machinery and equipment from the condemned premises, the jury was to deduct its value from the total damages; further error is asserted in the court's instructions to the jury that the condemnees had not sustained their burden of proving the expense of the removal, transportation and reinstallation of machinery, equipment and fixtures not forming part of the real estate for which they sought damages. It is admitted that about June 15, 1967, after the date of condemnation, the son of the condemnees was by them permitted to begin moving machinery and equipment from the building. A letter dated July 14, 1967, from counsel for the condemnees to the Pennsylvania Department of Highways was admitted in evidence without objection. This letter advised "that as of the date of condemnation, posses-

sion was relinquished to the Commonwealth. Machinery and equipment or fixtures forming part of the real estate were not desired by the former owners thereof. Accordingly, the same was and is the property of the Commonwealth." The second paragraph of the same letter stated: "In said premises was also contained certain stock and merchandise in a damaged condition. You are hereby advised that same be and is hereby abandoned."

Section 607 of the Eminent Domain Code (26 P.S. §1-607) provides: "In the event the condemnor does not require for its use machinery, equipment or fixtures forming part of the real estate, it shall so notify the condemnee. The condemnee may within thirty days of such notice elect to remove said machinery, equipment or fixtures, unless the time be extended by the condemnor. If the condemnee so elects, the damages shall be reduced by the fair market value thereof severed from the real estate."

In view of the whole thrust of the condemnee's testimony as to damages, that the building and equipment constituted a going manufacturing plant, and in view of the letter above referred to, it is clear that we are here concerned only with equipment *forming part of the real estate* under §607 and not with personal property *not* forming part of the real estate which is covered by §608. Section 608 provides that the condemnee shall be entitled, as damages, to the reasonable expenses of the removal, transportation and reinstallation of machinery, equipment and fixtures *not* forming part of the realty. Therefore, since the condemnees were not entitled to the removal expenses as provided in §608, even if the court was in error in its instruction that the condemnees had failed to produce sufficient competent evidence of the cost of removal, the condemnees were not harmed thereby since the machinery and equipment removed formed *part*

*of the real estate;* removal expenses were thus not compensable.

A condemnee is entitled to the fair market value of his property including the machinery, equipment and fixtures forming part of the real estate taken. However, if the condemnee elects their removal under §607, his damages "shall be reduced by the fair market value thereof severed from the real estate." The instruction of the trial judge on this point was: "Eighteen is denied, but I will instruct you, in considering machinery and equipment or fixtures which, if you determine, are part of the real estate, if any of those items were removed by the condemnees, the value of them would be deducted in arriving at your fair market value of the premises." The trial judge by this instruction unfortunately omitted to charge the jury specifically as provided by §607, that the condemnees' damages were to be reduced by the fair market value of the machinery and equipment *severed* from the real estate as distinct from the fair market value thereof *in place* as part of the real estate. The value of machinery and equipment *in place* as part of the real estate is generally greater than the value of that machinery and equipment *severed* from the real estate. *Gottus v. Allegheny County Redevelopment Authority,* 425 Pa. 584, 229 A. 2d 869 (1967). In arriving at the value of machinery and equipment severed from the real estate, the cost of severance and removal and reinstallation must be considered since this cost may be more than the machinery and equipment is worth in which event the severed value would be zero. In calculating the severed value of machinery and equipment, a prospective purchaser of machinery and equipment in place, would, therefore, consider the costs of severance, removal and reinstallation which must necessarily be incurred to render them useful to him.

Counsel for the condemnees specifically excepted to the above quoted instruction calling the court's attention thereto as follows: "You stated that if they find any machinery or equipment or fixtures forming part of the real estate were removed, they should deduct the value and you didn't explain it should be the fair market value *severed* from the real estate." The condemnees had presented evidence that the fair market value of the removed machinery and equipment in place was $27,369 and the fair market value thereof severed was $2,280. Unless properly instructed how was the jury to know which one of these two values was to be deducted from the fair market value of the premises? While we have no way of knowing on what basis or in what manner the jury arrived at its verdict of no damages, it could very well have under the instruction accepted the Commonwealth's evidence of damages of $10,500 and deducted therefrom the $27,369 in place value of the machinery and equipment removed, and concluded that the condemnees were, therefore entitled to no damages. Indeed, the lower court itself in its opinion refusing a new trial held that the verdict of the jury was sustainable on this very basis when it stated as follows: "It [the jury] could find that the plaintiffs' by removing machinery to the value of $27,000 had taken from the premises everything of value and left only that which was valueless. In fact, the plaintiff so testified." Since the court itself obviously confused the two different values when in its opinion it referred to the value of $27,000 which was the in place value as distinct from the severed value, a fortiori, the jury could have been likewise misled. In determining whether error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than to clarify a material issue, a new trial should be granted. *Randolph v.*

152

*Campbell,* 360 Pa. 453, 62 A. 2d 60 (1948). And so in a situation where, as here, there is evidence both of the *in place* value and of the *severed* value of the machinery and equipment removed under §607 of the Eminent Domain Code, it is not sufficient for the trial judge to charge merely that "the value of them" is deductible without specifying that it is the fair market value thereof *severed* from the real estate that is to be deducted and without defining the term "fair market value thereof severed from the real estate" with an explanation of the distinction between the two values. Cf. *Herr v. Erb,* 163 Pa. Superior Ct. 430, 62 A. 2d 75 (1948). The failure of the trial judge specifically and clearly to restrict the consideration of the "value" which the jury was to deduct to the value severed from the real estate was therefore reversible error, especially since the condemnees' counsel had specifically directed the trial judge's attention to such failure.

In view of our conclusion that the court below erred in this instruction and that a new trial must be granted because of that error, we deem it unnecessary to pass upon the other alleged trial errors assigned in support of the appeal.

Judgment reversed and new trial granted.

Mr. Justice COHEN dissents.