483 A.2d 912

**Daniel B. MILLER and Laura A. Miller, Park G. Hoffman and Ruth A. Hoffman**

v.

**C.P. CENTERS, INC., and Andrew M. Pipa, Jr., Oscar E. Kehler, William P. Zurick, Clyde Fry, and John M. O'Brien, Partners in the firm t/d/b/a Host Hills Associates, a limited partnership, Appellants.**

Superior Court of Pennsylvania.

Argued April 4, 1984.

Filed Oct. 26, 1984.

624

Randolph M. Baker, Harrisburg, for appellants.

William A. Fetterhoff, Harrisburg, for appellees.

Before WICKERSHAM, OLSZEWSKI and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellants contend that (1) appellees' claim is barred by the doctrine of laches, (2) the lower court did not apply the

appropriate legal standard when it found appellants liable for damage to appellees' property, and (3) the lower court erred in making certain aspects of the damage award. We disagree and, accordingly, affirm the order of the court below.

Appellants, C.P. Centers and Host Hills Associates, are successors-in-interest to the Chambers Ridge apartment development in Swatara Township, Dauphin County. In 1971, Chambers Hills, a limited partnership, began developing the apartment complex in two sections. The first section was completed in 1972, but the second section was abandoned, unfinished, two years later. C.P. Centers took possession of the second section as mortgagee and completed it in 1976. Host Hills Associates purchased the first section from the original owner and the second section from C.P. Centers upon its completion. A line of tennis courts was added in 1980. This apartment complext is situated at a higher elevation than appellees' property.

In October, 1978, appellees, the Millers and the Hoffmans, brought a complaint in law and equity alleging that the development of appellants' property had increased surface water runoff, resulting in erosion, silt deposits and flooding, and depleted the water table causing damage to a spring-fed pond on the Hoffmans' property. On May 14, 1982, the lower court entered a decree nisi enjoining appellants from discharging unreasonable quantities of surface waters and silt onto appellees' lands, awarding damages to appellees for silt removal and erosion repair, and compensating the Hoffmans for the installation of a well and pump to replenish their pond in the event that remedial measures did not reestablish the flow of the underground spring within a reasonable time. Exceptions to the decree nisi were denied and a final order was entered on October 29, 1982. This appeal followed.

■ Appellants contend first that appellees' cause of action is barred by the doctrine of laches. In *Wilson v. King*

*of Prussia Enterprises, Inc.,* 422 Pa. 128, 221 A.2d 123 (1966) our Supreme Court stated:

> The application of the equitable doctrine of laches does not depend upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under the circumstances of the particular case, the complaining party is guilty of a want of due diligence in failing to institute his action to another's prejudice. The question of laches is factual and to be determined by an examination of the circumstances.

*Id.,* 422 Pa. at 133, 221 A.2d at 126 (citations omitted). Here, we find no lack of due diligence on appellees' part. Construction of the apartment complex began in 1971 and continued through 1976, causing a gradual increase in runoff as construction progressed. Once the runoff began noticeably to damage their property, appellees brought the problem to the attention of Swatara Township authorities. They also sought to remedy the problem by contacting Dauphin County Water Conservation, the Department of Environmental Resources and the original contractor, and by negotiating with appellants. In 1978, after these avenues of relief proved unsuccessful, appellees filed the instant suit. Because appellees did not sit on their rights but, instead, diligently pursued their remedies in response to a continuous, increasing injury, we hold that their cause of action is not barred by laches.

Appellants next contend that liability for damage from surface waters may not be imposed upon the owner of higher land unless that landowner "is guilty of negligence which causes unnecessary damage to the servient owner, or where, by an artificial channel, he collects and discharges surface waters in a body or precipitates them in greatly increased quantities upon his neighbor." *Chamberlin v. Ciaffoni,* 373 Pa. 430, 437, 96 A.2d 140, 143 (1953). Therefore, because appellees did not prove that appellants were negligent, and because appellants utilized a natural watercourse to discharge surface waters, appellants argue that they are not liable for the damage to appellees' property. We disagree.

In *Westbury Realty Corp. v. Lancaster Shopping Center*, 396 Pa. 383, 152 A.2d 669 (1959), developers of a shopping center were held liable for damage resulting from increased surface water runoff. There, our Supreme Court noted that, when legal concepts of water flow were developed, extensive urban development of rural lands was not contemplated. Consequently, the Court devised a new approach to situations in which urban development of rural lands covered significant portions of natural soil with nonporous materials and buildings, thereby preventing natural seepage and increasing the flow of surface waters. In such a case, the Court held that the development was "an artificial use of the land for which the developers must make the proper accommodation so as not to place the burden of the increased flow on the servient tenement." *Id.*, 396 Pa. at 389, 152 A.2d at 672. The Court also observed that where surface water is unreasonably or unnecessarily changed in quantity or quality, the lower property owner suffers a legal injury. *Id.*, 396 Pa. at 387, 152 A.2d at 672, *citing Lucas v. Ford*, 363 Pa. 153, 156, 69 A.2d 114, 116 (1949).

■ Similarly, in the instant case, appellants' apartment development constitutes an "artificial use". The development covers a significant portion of its twenty-five acres with impermeable buildings and pavement, thereby preventing natural seepage and increasing the flow of surface waters from the development by 214 to 353 per cent. (N.T. April 6, 1981 at 6–7). In addition, as in *Westbury*,[1] trial testimony indicated that the increased runoff could have been predicted and prevented. (N.T. April 6, 1981 at 14–16). We therefore hold that the lower court reasonably found that appellants had unreasonably and unnecessarily changed the quantity of surface water flowing over appellees' property.

■ Finally, appellants challenge certain aspects of the damages awarded to appellees. They initially challenge the award of damages for removing silt from the channel of the

1. In *Westbury*, because the developers demurred to plaintiff's complaint, the court accepted as true the plaintiff's allegation that the runoff could have been prevented.

natural watercourse, through which the majority of the surface waters from appellants' property drains.[2]  This challenge is based upon a statement by appellees' expert witness that "I honestly don't see that [cleaning the channel] would make a great improvement to the property." (N.T. October 29, 1980 at 55).  The measure of damages for injury to property is the cost of repairs where that injury is repairable; however, where the injury is characterized as permanent, the measure of damages becomes the decline in the fair market value of the property. *Rabe v. Shoenberger Coal Co.*, 213 Pa. 252, 62 A. 854 (1906); *Wade v. S.J. Groves & Sons Co.*, 283 Pa.Superior Ct. 464, 424 A.2d 902 (1981).  In the instant case, the lower court, sitting without a jury, had to judge the credibility of the witnesses and weigh their testimony. *Courts v. Campbell*, 245 Pa.Superior Ct. 326, 369 A.2d 425 (1976).  As the factfinder, it was the judge's prerogative to believe part of a witness' testimony and find him mistaken as to the other part. *Walker v. Martin*, 214 Pa.Superior Ct. 287, 257 A.2d 619 (1969).  The statement cited by appellants contradicts substantial other testimony by the same expert to the effect that silt in the channel had damaged appellees' property and that its removal would diminish the potential for flooding caused by increased runoff.  (N.T. October 29, 1980 at 18–19, 22–24, 52–55, 57–58).  On these facts, the lower court reasonably resolved the conflicting testimony and found that the presence of silt in the channel had damaged appellees' property and should be remedied.

Appellants also challenge the award to the Hoffmans for the installation of a well and pump to replenish their pond.  Appellants argue that Pennsylvania law does not impose liability for non-negligent interference with subsurface waters such as the spring in this case.  We find the case of subsurface waters analogous to that of surface waters.  As our Supreme Court noted in *Westbury Realty Corp. v. Lancaster Shopping Center, supra,* new attitudes

2. Appellants incorrectly state in their brief that the lower court awarded $3,025.00 to the Millers and $7,260.00 to the Hoffmans for the cleaning of the stream channel.  In fact, only a portion of those sums were awarded for that purpose; the remainder of the award was made for erosion repair and grading.

must be developed toward land uses, such as large shopping complexes and apartment developments in rural areas, which were not contemplated when our legal concepts of water flow were developed.  As a consequence, the standard of liability enunciated in *Westbury* has been extended to subsurface waters.  *See Keim v. Tyson,* 53 Westmoreland County L.J. 25 (1971) (servient landowner may recover damages and seek equitable relief for an unnecessary change in volume of subsurface waters).  Reduction of seepage caused by covering natural soil with impermeable surfaces not only increases surface water runoff, but also prevents recharge of the ground water table.  Here, the development of appellants' property nearly extinguished the flow of the spring feeding the Hoffmans' pond.  As we noted previously, this result could have been predicted and prevented.  Accordingly, we find that the Hoffmans suffered a legal injury when appellants unreasonably and unnecessarily interfered with the flow of the spring feeding the Hoffmans' pond.  Because testimony at trial indicated that the damage was remediable, N.T. October 29, 1980 at 24, we hold that the award of damages for the installation of a well and pump to replenish the pond was proper.

For the reasons expressed above, we affirm the order of the lower court.

Affirmed.