562 A.2d 913

**Donald C. DOUGLASS and Regina M. Douglass, his wife, Appellees,**

v.

**LICCIARDI CONSTRUCTION COMPANY, INCORPORATED, a Pennsylvania Corporation, a/k/a Foxchase, Appellant.**

Superior Court of Pennsylvania.

Submitted March 13, 1989.

Decided Aug. 14, 1989.

David B. Reiss, Connellsville, for appellant.

Amy E. Hewitt, Latrobe, for appellees.

Before WIEAND, KELLY and HESTER, JJ.

WIEAND, Judge:

In this action on a building contract, the jury found that the contract had been breached by the builder, Licciardi Construction Company (Licciardi), and awarded damages to the owners, Donald Douglass and Regina Douglass, in the amount of fifteen thousand ($15,000) dollars. After post-trial motions had been denied and judgment entered on the verdict, Licciardi appealed.

The case was submitted to the jury on special interrogatories. In response thereto, the jury found that appellant had failed to construct a residential dwelling for appellees in accordance with the parties' contract and had performed some of the construction in a defective and unworkmanlike manner. The jury found further that the cost of correcting the defects and completing construction as agreed was fifteen thousand ($15,000) dollars. In answer to another interrogatory, the jury found that the dwelling house would

have had an increased market value of fifteen thousand ($15,000) dollars if it had been constructed according to the terms of the contract. Appellant contends that the jury's award of damages was unsupported by the evidence and contrary to law.

The general measure of damages in breach of contract cases is set forth in Restatement (Second) of Contracts § 347 as follows:

Subject to the limitations stated in §§ 350–53, the injured party has a right to damages based on his expectation interest as measured by

(a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus

(b) any other loss, including incidental or consequential loss, caused by the breach, less

(c) any cost or other loss that he has avoided by not having to perform.

"If defective or partial performance is rendered, the loss in value caused by the breach is equal to the difference between the value that the performance would have had if there had been no breach and the value of such performance as was actually rendered. *In principle, this requires a determination of the values of those performances to the injured party himself and not their values to some hypothetical reasonable person or on some market.*" Restatement (Second) of Contracts § 347, comment b (emphasis added).

Because it is sometimes difficult in building contract cases to prove with certainty the loss in value to the injured party, he or she may elect to calculate loss in value in accordance with Section 348(2) of the Restatement (Second) of Contracts. This section provides as follows:

(2) If a breach results in defective or unfinished construction and the loss in value to the injured party is not proved with sufficient certainty, he may recover damages based on

    (a) the diminution in the market price of the property caused by the breach, or

    (b) the reasonable cost of completing performance or of remedying the defects if that cost is not clearly disproportionate to the probable loss in value to him.

This has been explained further in comment c as follows:

    c. *Incomplete or defective performance.* If the contract is one for construction, including repair or similar performance affecting the condition of property, and the work is not finished, the injured party will usually find it easier to prove what it would cost to have the work completed by another contractor than to prove the difference between the values to him of the finished and the unfinished performance. . . .

    Sometimes, especially if the performance is defective as distinguished from incomplete, it may not be possible to prove the loss in value to the injured party with reasonable certainty. In that case he can usually recover damages based on the cost to remedy the defects. . . .

    Sometimes, however, such a large part of the cost to remedy the defects consists of the cost to undo what has been improperly done that the cost to remedy the defects will be clearly disproportionate to the probable loss in value to the injured party. Damages based on the cost to remedy the defects would then give the injured party a recovery greatly in excess of the loss in value to him and result in a substantial windfall. Such an award will not be made. It is sometimes said that the award would involve "economic waste," but this is a misleading expression since an injured party will not, even if awarded an excessive amount of damages, usually pay to have the defects remedied if to do so will cost him more than the resulting increase in value to him. If an award based on the cost to remedy the defects would clearly be excessive and the injured party does not prove the actual loss in value to him, damages will be based instead on the difference between the market price that the property would have had without the defects and the market price

of the property with the defects. This diminution in market price is the least possible loss in value to the injured party, since he could always sell the property on the market even if it had no special value to him.

■ Pennsylvania courts, consistently therewith, have generally allowed damages for incomplete or defective performance of a building contract to be measured by the cost of completing the work or correcting the defects by another contractor. See, e.g.: *Ecksel v. Orleans Construction Co.*, 360 Pa.Super. 119, 519 A.2d 1021 (1987); *Steinhauer v. Wilson*, 336 Pa.Super. 155, 485 A.2d 477 (1984); *Brourman v. Bova*, 198 Pa.Super. 279, 182 A.2d 245 (1962). It is only where the cost of completing performance or of remedying the defects is clearly disproportionate to the probable loss in value to the injured party that damages will be measured by the difference between the market price that the property would have had without the defects and the market price of the property with the defects. Although articulating the rule in a slightly different manner, the Court acknowledged and followed the same principle in *Gadbois v. Leb–Co. Builders, Inc.*, 312 Pa.Super. 144, 458 A.2d 555 (1983). Where the cost of remedying the defects in construction is not clearly disproportionate to the probable loss in value to the injured party, the breaching contractor cannot require that the injured party's damages be measured by the difference between the market price of the property without the defects and the price of the property with the defects.

The plaintiff-appellees in this case sought to recover damages measured by the cost of correcting the defects in the construction work performed by the defendant-appellant. They introduced evidence that the cost of correcting the defects would be $20,574.11. Appellant offered no evidence regarding the cost of making such repairs. Instead, appellant produced the testimony of a real estate appraiser whose opinion was that the market value of the residence would have been two thousand, five hundred ($2,500) dollars greater if it had been constructed in accord-

ance with the contract. The jury awarded damages of fifteen thousand ($15,000) dollars. Appellant contends that in the absence of evidence to contradict the testimony of its real estate appraiser, the jury could not properly award damages in excess of two thousand, five hundred ($2,500) dollars. We disagree.

■ Factual determinations and issues of credibility of witnesses are left to the jury as factfinder. *Williams v. Dulaney*, 331 Pa.Super. 373, 379, 480 A.2d 1080, 1083 (1984). As such, the jury is free to believe all, some or none of a witness's testimony. *Glider v. Commonwealth, Department of Highways*, 435 Pa. 140, 146, 255 A.2d 542, 545 (1969); *Miller v. C.P. Centers, Inc.*, 334 Pa.Super. 623, 629, 483 A.2d 912, 915 (1984). It is not bound by expert opinion as to value of property, although it must make its determinations based on the evidence which has been presented rather than on mere conjecture. *Glider, supra* 435 Pa. at 146, 255 A.2d at 545; *Semasek v. Semasek*, 509 Pa. 282, 288, 502 A.2d 109, 112 (1985); *Mellon Bank (East) National Ass'n. v. Pa. Restaurant of A.B.E., Inc.*, 364 Pa.Super. 567, 570, 528 A.2d 654, 655 (1987). In the instant case, appellant's appraiser testified that the difference in market values was, in his opinion, $2,500.00. However, he admitted that his opinion as to damages failed to consider certain aspects of the house which had been contracted for but not received by plaintiff-appellees. These included, inter alia, the failure of appellant to construct a pantry which was to be added to the kitchen area and its failure to construct extended roof overhangs and finished archways between the rooms. These did not affect market value, appellant's expert witness opined, because they were merely a matter of buyer preference. The plaintiff-appellees had contracted for these things, however, and they clearly had value to them. The weight to be accorded to the expert's opinion, therefore, was for the jury to determine. The jury was not compelled to accept the same or in reliance thereon conclude

that the cost of repairing the defects in construction was disproportionate to the loss of value to plaintiffs because of such defects.

■ The grant of a new trial on the ground that a verdict is excessive and contrary to the weight of the evidence is proper only when the verdict is so contrary to the weight of the evidence that it shocks one's sense of justice and makes a new trial imperative so that right may be given another opportunity to prevail. *Burrell v. Philadelphia Electric Co.*, 438 Pa. 286, 289, 265 A.2d 516, 518 (1970); *Phillips v. Schoenberger*, 369 Pa.Super. 52, 57, 534 A.2d 1075, 1077 (1987); *Bohner v. Stine*, 316 Pa.Super. 426, 436, 463 A.2d 438, 443 (1983); *Yandrich v. Radic*, 291 Pa.Super. 75, 79, 435 A.2d 226, 228 (1981), *appeal dismissed*, 499 Pa. 271, 453 A.2d 304 (1982). The trial court did not find the amount of the verdict shocking and denied appellant's motion for new trial. We perceive therein no abuse of discretion. Our review of the record also does not disclose that the award of damages was so disproportionate to the loss of value sustained by plaintiff-appellees as to result in a windfall to them.

Appellant argues, however, that the jury had no evidence on which to base a finding that the difference in market values of the residence defectively constructed and one completed according to the terms of the contract was fifteen thousand ($15,000) dollars. While this is technically correct, it does not impair the validity of the jury's finding that appellant's damages were in the amount of fifteen thousand ($15,000) dollars. We interpret the jury's finding as signifying that the cost of repairs, as awarded by the jury and fully supported by competent evidence, was not disproportionate to the loss of value to the plaintiff-appellees.

■ Appellant also contends that the trial court erred when it allowed plaintiffs' expert to testify to the cost of

making repairs after it became apparent that the witness had relied in part on prices contained in an insurance guide list. The price information, the witness said, was generally used throughout the industry. Although the published guidelines were not themselves admissible as substantive evidence, it does not follow that it was improper for a duly qualified expert to use accepted authorities to assist him in formulating his opinion. See: *Kearns by Kearns v. De-Haas*, 377 Pa.Super. 200, 209, 546 A.2d 1226, 1233 (1988), *appeal denied*, — Pa. —, 559 A.2d 527 (1989); *Steinhauer v. Wilson, supra* 336 Pa.Super. at 158, 485 A.2d at 479 (1984); *McDonough v. U.S. Steel Corp.*, 228 Pa.Super. 268, 272 n. 1, 324 A.2d 542, 544 n. 1 (1974). The witness, an expert in the construction and repair of residential houses, testified that he routinely used industry guidelines to make estimates in his own construction and repair business, and that he had considered them but had formulated his own opinion, based on his own costs of labor and materials, in estimating the cost of making necessary repairs to the home of the plaintiff-appellees. The trial court did not err in allowing him to testify to his estimate of such costs.

■ Finally, appellant argues that it was error to allow its expert to be asked on cross-examination whether the witness had been employed by appellant on other occasions. We find no merit in appellant's argument. A party is always entitled to explore the credibility of a witness and to expose any bias or interest which might affect the witness's testimony. *Downey v. Weston*, 451 Pa. 259, 301 A.2d 635 (1973); *Pittsburgh National Bank v. Mutual Life Insurance Co. of N.Y.*, 273 Pa.Super. 592, 417 A.2d 1206 (1980), *aff'd*, 493 Pa. 96, 425 A.2d 383 (1981). The witness, in this case, testified that he had been employed as an expert by appellant on one prior occasion. This was proper cross-examination. There was neither error nor prejudice in the jury's hearing such testimony.

Judgment affirmed.