## Brady v. Ballay, Thornton, Maloney Medical Associates Inc.

502

C.P. of Montgomery County, no. 91-09591.

*Marc C. Brecher,* for plaintiffs.
*George L. Young Jr. and Francis J. McGovern,* for defendants.

ALBRIGHT, *J.,* June 2, 1997—

FACTS AND PROCEDURAL HISTORY

Plaintiffs, Kim A. Brady and Scott E. Brady, as both natural guardians of Brooke Brady and in their own right, initiated this medical malpractice action against defendants, Holy Redeemer Hospital and Medical Center,[1] Ballay, Thornton, Maloney Medical Associates Inc.,

---

1. Pursuant to a stipulation signed by all parties and approved by the court, Holy Redeemer Hospital and Medical Center was dismissed from this case with prejudice.

and R. Scott Thornton M.D. by complaint filed on May 15, 1991. In said complaint, plaintiffs allege that Dr. Thornton, the attending obstetrician, and Ballay, Thornton, Maloney Medical Associates Inc., the obstetrical group to which he belonged, were negligent in the course of labor and delivery of Kim A. Brady's baby, Brooke Brady, and that such negligence caused Brooke Brady to suffer Erbs' Palsy or a brachial plexus injury, resulting in the limited use of her left shoulder, arm and hand. Specifically, plaintiffs contend that said defendants improperly prescribed the drug Pitocin to Kim A. Brady during her labor, improperly interpreted the fetal heart rate monitor tracings taken during the labor, and improperly utilized a vacuum extractor during the delivery of Brooke Brady.

During a jury trial held before the undersigned, defendants argued, with the support of their expert witness, Joseph S. Ferroni M.D., that, because the fetal heart monitor strips were reflecting signs of fetal distress that could have led to brain damage or death, it was necessary for Dr. Thornton to expedite delivery by using the vacuum extractor. To the contrary, plaintiffs' expert, Steven Goldstein M.D., opined that none of the heart monitor strips reflected any fetal distress whatsoever, and thus, there was no need for Dr. Thornton to use the vacuum extractor. Instead, Dr. Goldstein maintained that any variable decelerations appearing on the fetal heart monitor strips were due to the effects of the drug Pitocin, which was given to Kim A. Brady during labor; he further testified that, had Dr. Thornton terminated administration of the Pitocin, the fetal heart rate would have resumed a normal tracing pattern and there would have ensued a normal, spontaneous vaginal delivery. Plaintiffs' theory was countered, however, by Dr. Ferroni's testimony that, even after the administration of Pitocin was discontinued, the fetal heart rate did not improve.

Following a week of testimony, the jury returned a verdict in favor of defendants on September 18, 1996. Shortly thereafter, on September 25, 1996, plaintiffs filed a motion for post-trial relief, which, following oral argument held on April 3, 1997, and upon consideration of the parties' memoranda of law, was denied by this court in an order dated April 11, 1997. Plaintiffs then filed a notice of appeal, and pursuant to Pa.R.A.P. 1925(b) and this court's order of April 28, 1997, filed a concise statement of matters complained of on appeal on May 2, 1997, in which the following issues have been raised:

"(1) The trial court erred, over the plaintiffs' objection, in allowing defendants' obstetrical expert, Dr. Ferroni, to testify beyond the fair scope of his pretrial report;

"(2) The trial court erred in not allowing plaintiffs to cross-examine defense expert, Dr. Ferroni, regarding the fact that Dr. Thornton treated a former patient of Dr. Ferroni's professional corporation, which patient subsequently sued that corporation;

"(3) The trial court erred by not permitting plaintiffs to cross-examine Dr. Ferroni concerning the fact that counsel for Dr. Thornton, George L. Young Jr., also represented Dr. Ferroni's corporation in the aforementioned medical malpractice lawsuit."

## DISCUSSION

*I. The Trial Court Properly Found That Dr. Ferroni's In-Court Testimony Was Within the Fair Scope of his Pretrial Report and Did Not Cause the Plaintiffs Unfair Surprise*

During the trial and in their post-trial motion, plaintiffs argued that this court erred by allowing Dr. Ferroni to testify at trial that Dr. Thornton's decision to use

the vacuum extractor was based on abnormal fetal heart monitor tracings taken *in the delivery room.* Specifically, plaintiffs claimed that they had been led to believe, by Dr. Ferroni's pretrial expert report, that Dr. Thornton's decision to use the vacuum extractor was made *prior* to the time that Kim Brady was taken into the delivery room, and accordingly, any testimony to the contrary was impermissible under Pa.R.C.P. 4003.5(c) as being outside the scope of that report and constituting unfair surprise.

Initially, this court notes that "[r]ulings on the admission and exclusion of evidence are within the discretion of the trial judge and will not be reversed on appeal absent a manifest abuse of that discretion." *Tiburzio-Kelly v. Montgomery,* 452 Pa. Super. 158, 171, 681 A.2d 757, 764 (1996). Pa.R.C.P. 4003.5 provides, in pertinent part, that:

"(c) To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under . . . this rule, his direct testimony at the trial may not be inconsistent with or go beyond the fair scope of his testimony in the discovery proceedings as set forth in his deposition, answer to an interrogatory, separate report, or supplement thereto. However, he shall not be prevented from testifying as to facts or opinions on matters on which he has not been interrogated in the discovery proceedings."

The Superior Court has explained that the primary purpose of this rule is to avoid unfair surprise to an adversary concerning the facts and substance of an expert's proposed testimony. *Tiburzio- Kelly, supra* at 173, 681 A.2d at 764; *Walsh v. Kubiak,* 443 Pa. Super. 284, 291-92, 661 A.2d 416, 420 (1995). In applying this rule, the Superior Court has further stated that: "it is impossible to formulate a hard and fast rule for de-

termining when a particular expert's testimony exceeds the fair scope of his or her pretrial report. Rather, the determination must be made with reference to the particular facts and circumstances of each case. The controlling principle which must guide is whether the purpose of Rule 4003.5 is being served. The purpose of requiring a party to disclose, at his adversary's request, 'the substance of the facts and opinions to which the expert is expected to testify' is to avoid unfair surprise by enabling the adversary to prepare a response to the expert testimony." *Tiburzio- Kelly, supra* at 172-73, 681 A.2d at 764.

In the case at bar, this court found that plaintiffs were not unfairly surprised by expert testimony which indicated that Dr. Thornton's decision to proceed to surgery was based upon his belief that the fetal heart monitor strips reflected fetal distress. First, in his pretrial report, defendants' expert, Dr. Ferroni, stated that, prior to expediting delivery, the fetal heart monitor revealed variable decelerations as well as a heart rate of 100 beats per minute, conditions which, by definition, reflect fetal distress. Secondly, after reviewing the deposition testimony of plaintiffs' expert, Dr. Goldstein, it is evident that plaintiffs were, in fact, aware that Dr. Thornton had interpreted the fetal monitor strips as reflecting fetal distress.[2] Thirdly, as the central issue of the entire case was whether Dr. Thornton properly interpreted the fetal heart monitor strips, plaintiffs cannot possibly claim to be surprised by expert testimony that the strips

---

2. As defendants point out in their brief in opposition to plaintiffs' motion for post-trial relief, Dr. Goldstein "repeatedly testified that defendant had misinterpreted the situation and specifically that 'tragically I believe Dr. Thornton . . . interpreted [the strips] as some form of fetal distress.' " V.D.T. pp. 45-46. See also, V.D.T. pp. 50, 56, 57, 64, 76, 77, 79, 87, 105, 109, 110, 119.

taken during the six minutes *immediately prior to* delivery supported his decision to proceed to surgery.

II. *The Trial Court Properly Disallowed Plaintiffs'*
*Questioning of Dr. Ferroni Regarding the Fact*
*That Dr. Thornton Treated a Former Patient of*
*Dr. Ferroni's Corporation, Who Subsequently Sued*
*That Corporation*

Plaintiffs have also argued on appeal that this court improperly disallowed cross-examination of defense expert, Dr. Ferroni, regarding the fact that defendant, Dr. Thornton, treated a former patient of Dr. Ferroni's corporate partner, Joseph Russino M.D., which patient currently has a lawsuit pending against Dr. Ferroni's corporation. Plaintiffs argued that such cross-examination would have enabled the jury to infer that Dr. Ferroni *might* have slanted his testimony in favor of Dr. Thornton with the hope that Dr. Thornton *might* reciprocate by slanting his testimony in favor of Dr. Ferroni's corporation in the other aforementioned lawsuit.

In *Smith v. Celotex Corp.,* 387 Pa. Super. 340, 349-50, 564 A.2d 209, 213-14 (1989), the Superior Court stated that it is permissible to impeach an expert witness by demonstrating partiality to the party for whom the expert is testifying, and that "[w]hatever tends to show the interest or feeling of a witness in a cause is competent by way of cross-examination . . . ." The court went on to state, however, that *"the precise degree to which such impeachment cross-examination will be permitted rests in the sound discretion of the trial court." Id.,* citing *Commonwealth v. Lane,* 492 Pa. 544, 424 A.2d 1325 (1981); *Downey v. Weston,* 451 Pa. 259, 301 A.2d 635 (1973). (emphasis added)

Case law indicates that, in exercising its discretion to determine the scope of cross-examination, it is within

the discretion of the trial court to preclude cross-examination on collateral matters that are not related to the issues at trial and which are likely to confuse or mislead the jury. See *Commonwealth v. Wilson,* 543 Pa. 429, 672 A.2d 293 (1996), *cert. denied, Wilson v. Pennsylvania,* 117 S.Ct. 364, 136 L.Ed.2d 255 (1996); *Commonwealth v. Marchand,* 452 Pa. Super. 625, 682 A.2d 841 (1996); *Giosa v. School District of Philadelphia,* 157 Pa. Commw. 489, 630 A.2d 511 (1993), *appeal denied,* 538 Pa. 638, 647 A.2d 512 (1993). As stated in *Mohn v. Hahnemann Medical College and Hospital,* 357 Pa. Super. 173, 179, 515 A.2d 920, 923 (1986), "[t]here must be, and is, a point beyond which inquiry is/will be held to be prejudicial, too intrusive and only serving to divert the case into collateral matters."

In the case at bar, this court found that any connection between the instant lawsuit and the pending medical malpractice suit against the defense expert's corporation was too attenuated to be brought out on cross-examination, and that any probative value that such questioning could provide was clearly outweighed by the prejudice it could cause and the possibility that it would both confuse the jury and divert their attention away from the actual issues of this case.

III. *The Trial Court Properly Disallowed Plaintiffs' Questioning of Dr. Ferroni Regarding the Fact That Counsel for Dr. Thornton, George L. Young Jr., Also Represented Dr. Ferroni's Corporation in the Aforementioned Medical Malpractice Suit*

Plaintiffs' final argument on appeal is that this court erred by precluding them from cross-examining Dr. Ferroni concerning the fact that counsel for Dr. Thorn-

ton, George L. Young Jr., also represented Dr. Ferroni's corporation in the aforementioned medical malpractice lawsuit. For their argument, appellants relied primarily upon the Superior Court opinion in *Tiburzio-Kelly,* in which case plaintiffs also sought to show that a professional relationship existed between the experts and the defense attorneys, a relationship which went beyond the confines of that particular case. On review, the Superior Court stated that "[c]ertainly, evidence of an ongoing relationship between the witnesses and attorneys is information which the jury would want to know about, and we believe is entitled to know about. See *Douglass v. Licciardi Construction Co.,* 386 Pa. Super. 292, 300, 562 A.2d 913, 917 (1989)." *Id.* at 178, 681 A.2d at 767.

In the instant case, the court's ruling was entirely consistent with the decision in *Tiburzio-Kelly. supra,* as plaintiffs *were permitted* to discuss the fact that defendant's attorney, Mr. Young, and defense expert, Dr. Ferroni, had a professional relationship which went beyond the confines of this suit; specifically, plaintiffs were allowed to reveal that Mr. Young was in fact representing Dr. Ferroni in another matter. The only limitation on plaintiffs' questioning, based upon the reasons previously discussed, was that plaintiffs could not mention that the other matter was an unrelated medical malpractice case.

Accordingly, for all of the aforementioned reasons, this court's order of April 11, 1997, denying plaintiffs' motion for post-trial relief, should be affirmed.