J-S38015-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| POSADA INVESTMENTS, INC. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ELIAKIM ENTERPRISES, LLC, | : | |
| BROTHER MORENO CONSTRUCTION, | : | |
| LLC, A & A CONTRACTORS PRIDE, | : | No. 3377 EDA 2024 |
| INC., MICHAEL A. BRADLEY, TEROX | : | |
| ELECTRIC & CONSTRUCTION | : | |
| CORPORATION | : | |
| | : | |
| | : | |
| APPEAL OF: ELIAKIM ENTERPRISES, | : | |
| LLC | : | |

Appeal from the Judgment Entered January 17, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 211101452

BEFORE: McLAUGHLIN, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.: **FILED FEBRUARY 13, 2026**

Eliakim Enterprises, LLC ("Eliakim") appeals from the judgment of $299,785.19 entered against it and in favor of Posada Investments, Inc. ("Posada") for breach of contract. Eliakim argues the court applied the wrong standard to calculate damages, the evidence of damages was speculative, and the court erred in relying on the expert's opinion of damages. We affirm.

Posada purchased a residential property on Federal Street in Philadelphia. Posada and Eliakim entered into a contract in November 2019 whereby Eliakim would act as project manager and oversee the property's rehabilitation. Eliakim was to be responsible for the hiring and payment of

contractors and agreed to rehabilitate the property within seven months. Posada paid Eliakim between $224,000 and $230,000 for the project.

Eliakim thereafter contracted with Brother Moreno Construction LLC ("Brother Moreno") to complete the scope of work identified in Eliakim's contract with Posada. Eliakim paid Brother Moreno the entirety of the money Posada had provided for the project.

A few months into the contract period, the principal of Posada, Maria Posada ("Maria"), inspected the property. She identified several serious issues with the construction, including that the floor was not level, the windows were not properly installed, and water was infiltrating the property. Trial Court Decision, filed 8/28/24, at 5 (citing N.T., 4/11/24, at 23-24). Nestor Colon, who owns Eliakim, assured Posada that he would have Brother Moreno fix the problems. A month later, when Maria made another visit to the property, she saw the problems had not been fixed. Colon told her it was because Brother Moreno's staff was sick or had been working on other properties.

Brother Moreno left the job in late summer or early fall 2020, without completing the rehabilitation. It informed Posada that the blueprints Eliakim had given it were incorrect, which resulted in a wall being built in the wrong place, and that the wall needed to be demolished and rebuilt. It also told Posada that it was leaving the job because it was in an unrelated dispute with Colon regarding a different project. Brother Moreno asked Posada to pay it another $40,000 to complete the work, and Posada refused.

Eliakim filed a claim against Brother Moreno's insurance policy and advised Posada not to hire a new contractor until the claim had been resolved. Posada waited six or seven months. The insurance company denied the claim. Posada fired Eliakim in February or March 2021. It hired a new contractor to inspect the property, which informed it that Brother Moreno's work would have to be removed and redone.

Posada brought this action against Eliakim and Brother Moreno for breach of contract, negligence, fraudulent misrepresentation, and unjust enrichment.[1] Brother Moreno failed to respond to the complaint, and the court entered default judgment against it.

At a bench trial, Posada presented testimony establishing the above facts. It also presented the testimony of an expert in engineering and the proper methods of construction, repair, and removal, Jospeh Keil, P.E. Keil testified that he inspected the property in February 2022. He stated that due to large gaps surrounding the window frames and external vents and the positioning of the roof drain, water had infiltrated the stucco. Keil opined that the entire stucco veneer would therefore need to be replaced. He also found water had been entering the property through an unattached roofing membrane, an unsealed pilot house door, and the improperly sloping roof deck and basement window well. Keil observed mold on every floor of the property as well as water stains on the ceilings and walls. He opined that the work

_____

[1] The other claims and parties in the litigation are not at issue in this appeal.

performed was "[n]ot even close" to industry standards and that the only way to make the property habitable was to "strip it down to the studs." N.T., 4/11/24, at 130-31. His report stated,

> Based upon my inspection and experience, it is my professional opinion that the work initially performed at 2215 Federal Street was of poor quality, deviated from the contract drawings and was not in accordance with applicable codes. Failed to maintain a water-tight structure during construction and was generally substandard. Based upon the above, much of the work needed to be repaired, relocated, removed or replaced.

*Id.* at 133.

On cross-examination, Keil admitted that he did not know which party was responsible for the conditions he observed at the property. *Id.* at 133-134. Nor did he know when the substandard construction occurred. *Id.* at 134, 138. He also did not offer any estimate as to the cost of repairs or remediation. *Id.* at 137-38. Furthermore, Keil stated he did not review any of the contracts at issue. *Id.* at 138.

Maria testified that after Posada fired Eliakim, it spent $150,211.70 on labor and $80,769.33 on materials to put the property in the condition contemplated by the contract. *Id.* at 50, 59. Maria also testified her company incurred $68,804.60 in carrying costs based on the delay in the construction. *Id.* at 55-56. Maria explained the carrying costs included such items as loan interest, utility bills, and licenses and inspections. *Id.* at 38-39. To substantiate these sums, Posada provided copies of the checks, invoices, bills, and receipts, along with charts sub-totaling the amounts and providing a brief

description of each category of payments. Maria testified that it took until 2023 to finish the rehabilitation because the new contractors continued to identify problems with the property that Eliakim and Brother Moreno had failed to fix. **See id.** at 109-10.

The court found Eliakim liable for breach of contract. It awarded damages against Eliakim and Brother Moreno, jointly and severally, in the amount of $299,785.19.[2] The court found Posada did not present sufficient evidence to support an award of attorneys' fees and costs and did not prove Eliakim was liable for negligence, fraudulent misrepresentation, or unjust enrichment. Eliakim filed a post-trial motion for judgment notwithstanding the verdict, which the court denied.

Eliakim appealed.[3] It raises the following issues:

1. Whether the trial court erred or abused its discretion by finding for [Posada] on its breach of contract claim by applying the wrong calculation of damages as applicable to the breach of contract?

[2]. Whether the trial court erred or abused its discretion by finding for [Posada] on its breach of contract claim by applying the testimony of [Posada] to determine the amount of damages?

[3]. Whether the trial court erred or abused its discretion by admitting the testimony of the [e]xpert Joseph Keil regarding the

---

[2] The three sums Posada claimed as damages total $299,785.63. Neither party has raised the 44-cent discrepancy.

[3] Eliakim prematurely appealed from the order denying its post-trial motion. **See Johnston the Florist, Inc. v. TEDCO Const. Corp.**, 657 A.2d 511, 514 (Pa.Super. 1995). This Court ordered Eliakim to praecipe the trial court to enter judgment. The trial court's prothonotary entered judgment on January 17, 2025, perfecting the appeal. **See** Pa.R.A.P. 905(a)(5).

breach of contract claim where he testified he had never read the contract?

Eliakim's Br. at 12 (answers omitted).[4]

Eliakim's first asserts the court applied the wrong standard to calculate damages. After discussing the law, Eliakim makes the following argument:

[Posada] failed to prove consequential damages or direct damages because [the] evidence provided was vague and speculative and [Posada] failed to mitigate damages by choosing to designate herself as a general contractor and delaying construction at the Property. [Posada's] [e]xpert testified he visited the Property [o]n February 16, 2022, and little work had been done and [Posada] waited until July 2021 to hire any new contractors[,] almost a year after Brother Moreno walked off the job. Hence, alleged work by other contractors who never testified as to nature of their work cannot be dispositive as to damages because the work by other contractors did not happen within a reasonable time after Brother Moreno left the job [in] August 2020 and after [Eliakim] was fired in February 2021 and it was not determined to what extent the work of other contractors was needed to remediate alleged breaches made by [Eliakim] or that their work was within the scope of the original contract.

*Id.* at 19.

Eliakim's argument does not address the method by which the court calculated damages or offer an alternative method. His argument that the court applied the wrong standard to calculate damages is therefore waived.[5]

---

[4] We have reordered the second and third issues to correspond to the order in which Eliakim presents its arguments. *See* Pa.R.A.P. 2119(a).

[5] In the context of incomplete or defective performance of a construction contract, damages are generally calculated by "the cost of completing the work or correcting the defects of another contractor." ***Douglass v. Licciardi Constr. Co.***, 562 A.2d 913, 916 (Pa.Super. 1989); ***accord Cohen v. JS Associated Serv.***, No. 390 WDA 2017, 2017 WL 6395943, at *7 (Pa.Super.
*(Footnote Continued Next Page)*

Eliakim's arguments that the evidence of damages was vague and speculative, that Posada spent the alleged costs on construction that exceeded the scope of its contract with Eliakim, and that Posada failed to mitigate damages, are not fairly suggested by the question presented. Those arguments are therefore also waived. *See* Pa.R.A.P. 2116(a).

Furthermore, we would find no merit to these claims. The court's award of damages was not based on mere speculation. The court noted that Posada "presented detailed and credible evidence including testimony, checks, and

_____

filed Dec. 15, 2017) (unpublished mem.). An exception exists where the cost of completing performance of the contract is clearly disproportionate to any reduction in the expected market value of the property that was caused by the breach. **Douglass**, 562 A.2d at 916. The defendant bears the burden to prove the exception. **Gloviak v. Tucci Constr. Co.**, 608 A.2d 557, 560 (Pa.Super. 1992).

Here, neither party adduced evidence regarding the market value of the property before the breach, after the breach, or after the construction was complete. Moreover, Maria testified that when Brother Moreno finished construction, the property was in worse condition than when construction began. This indicates the difference in market value between the property after the breach and the expected market value of the property after the completion of the contract exceeded the value of the contract. There was no basis on which the court should have found the cost to complete the contract was clearly disproportionate to the reduction in market value caused by the breach.

As for consequential damages, Eliakim cites no authority preventing the court from awarding them. "The purpose of damages in a breach of contract case is to return the parties to the position they would have been in but for the breach." **Pittsburgh Const. Co. v. Griffith**, 834 A.2d 572, 580 (Pa.Super. 2003); **see also Douglass**, 562 A.2d at 915 (quoting Restatement (Second) of Contracts § 347, which provides damages for breach of contract will include "incidental or consequential loss, caused by the breach"). Accordingly, if Eliakim had not waived these arguments, we would find no error.

spreadsheets outlining the costs associated with putting the [p]roperty back in the condition originally contemplated by the contract between [Eliakim] and [Posada]." Trial Court Rule 1925(a) Opinion, filed Feb. 3, 2025, at 1.

In addition, Eliakim has failed to substantiate its argument that any of the costs claimed by Posada were spent on construction that exceeded the scope of the contract. Maria testified that the money was spent to rectify the construction defects and complete the contract. The court found Posada's witnesses and exhibits credible. Eliakim was free to cross-examine Posada's witnesses on the amounts claimed, subpoena the contractors who performed the remediation about the extent of their work, or present testimony that the completed project was in superior condition than that contemplated by the contract or that any particular expense exceeded the scope of the contract. It failed to do so.

Finally, we find no merit to Eliakim's argument that the court failed to consider Posada's failure to mitigate damages.

> A party who suffers a loss has a duty to make a reasonable attempt to mitigate damages, but the burden is on the party who breaches the contract to show how further loss could have been avoided through the reasonable efforts of the injured party. However, an injured party is not obligated to mitigate damages when both he and the liable party had an equal opportunity to do so.

*Ecksel v. Orleans Constr. Co.*, 519 A.2d 1021, 1028 (Pa.Super. 1987) (citations omitted).

Eliakim did not provide evidence about any change in the condition of the property between the time Brother Moreno stopped working, the time

Eliakim's contract was terminated, and when Posada resumed construction. Moreover, Maria testified that Eliakim was aware of the water infiltration and some other issues while Brother Moreno was working. According to her testimony, for at least the first six or seven months after Brother Moreno ceased construction, Posada made no changes to the property based on Eliakim's advice to wait until the insurance claim was resolved. During at least this period (through early 2021), Eliakim had an equal opportunity to mitigate damages, as it was the project manager.

Next, while Keil testified that he did not inspect the property until 2022, his testimony and report relied heavily on photographs of the property. *See* N.T., 4/11/24, at 122-30. Posada argued that the photographs were taken around the time Brother Moreno stopped working, and that Keil merely reviewed them as part of his report. *See* N.T., 4/12/24, at 44, 48, 71.[6] Colon testified that at least one of the photographs from Keil's report was taken in 2020, towards the end of Brother Moreno's time on the job. *See id.* at 39-43. Eliakim presented no evidence contradicting Posada's argument that the photographs supporting Keil's testimony accurately reflected the property at the time Eliakim breached the contract. Nor did it furnish evidence that any portion of the subsequent construction costs were due to Posada's failure to mitigate damages after that time.

_____

[6] Keil's testimony and report fail to clarify who took the photographs or when they were taken.

In its second issue, Eliakim asserts the court erred in relying on Posada's testimony to calculate damages. Eliakim poses the identical argument, word-for-word, as its first issue. **See** Eliakim's Br. at 21. Eliakim adds, "Although [Posada] proved money was spent[,] [Posada] never proved the additional money spent was applied to cure any contractual breach or that the additional payments were for items within the scope of the original contract." ***Id.*** We reject this argument for the same reasons as stated above: Maria testified that the money was spent to rectify the breach of contract, the court found the testimony credible, and Eliakim failed to adduce any testimony to the contrary.

In its third issue, Eliakim argues the court erred in admitting Keil's testimony regarding breach of contract. Eliakim points out Keil did not inspect the property until a year after Brother Moreno stopped working, and that Keil testified he did not know what work had been performed on the property, or who had performed it. Eliakim asserts that Keil admitted he did not read the contract or review the building plans provided to Brother Moreno. Eliakim further contends that Keil stated he could not opine whether any remedial work had been done to stop the water infiltration before his inspection. According to Eliakim, Keil testified he had no formal training as to mold infestation and did not explain any scientific methodology as to his conclusion of mold infestation. Eliakim also asserts that because Keil never read the contract, "it is impossible that his opinion could be probative as to damages for any breach of contract claim." Eliakim's Br. at 23.

To the extent that Eliakim argues the court erred in admitting Keil's testimony, Eliakim has waived that argument by failing to object to Keil's admission as an expert or to any of his testimony. **See** Pa.R.A.P. 302(a); **El-Gharbaoui v. Ajayi**, 260 A.3d 944, 965 (Pa.Super. 2021); **see also** Trial Ct. R. 1925(a) Op. at 3. Furthermore, while the court relied in part on Keil's testimony in finding Eliakim in breach, Keil did not opine on that ultimate issue, and limited his testimony to the extent of the construction defects he observed. **See** Trial Ct. R. 1925(a) Op. at 3 (citing N.T., 4/11/24, at 137-38).

Moreover, as stated above, while Keil did not inspect the property until 2022, Posada argued Keil drew his conclusions from photographs that were taken in 2020, before Posada terminated Eliakim's contract. Eliakim failed to offer any evidence that the construction defects occurred after it was terminated, such that Keil's testimony would be irrelevant as to whether Eliakim had breached the contract. Finally, we reject Eliakim's contention that Keil's testimony was not probative as to damages. Keil did not opine on the cost to repair the defects, but did say that the property would need to be stripped "down to the studs." **See** N.T., 4/11/24, at 130-31, 137-38. The court did not err in considering his testimony when awarding damages.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>2/13/2026</u>