574 A.2d 684

**Robert FREEMAN and Marlene Freeman, Appellees,**

v.

**MAPLE POINT, INC. and Toll Brothers, Appellants.**

Superior Court of Pennsylvania.

Argued Feb. 15, 1990.

Filed May 9, 1990.

Robert C. Houpt, Paoli, for appellants.

James E. Lynch, Langhorne, for appellee.

Before CAVANAUGH, OLSZEWSKI and FORD ELLIOTT, JJ.

CAVANAUGH, Judge:

Robert and Marlene Freeman, the appellees herein, purchased a new home from the appellants, Maple Point, Inc. and Toll Brothers, in July, 1984. The house was part of a housing development of single homes and the purchase price was $95,900.00. The house was situated on a lot approximately 80 feet × 130 feet. Because of the grading

of the lot and the nature of the soil, which had a high clay content, and the construction of the driveway, water collected in certain areas of the lot after heavy rains. This was brought to the builder's attention by the Freemans and the builder attempted to correct the situation by regrading the property. The Freemans also made improvements on the house after they purchased it by enclosing the patio at the rear of the house and adding a 12 feet × 13 feet concrete patio. The appellees also put in trees and sod on the property.

After at least four attempts by the builder to regrade the property were not successful in solving the surface water problem, a civil action in assumpsit was commenced against Maple Point, Inc. and Toll Brothers. The demand for damages was more than $7,000.00, but less than $20,000.00 and the matter was referred to arbitration. An award was entered by the arbitrators in favor of the appellees and against the appellants in the amount of $5,874.55. Appellants filed a timely appeal to the Court of Common Pleas. Following a jury trial before Ward, J., a verdict was entered in favor of the appellees and against the appellants in the amount of $45,785.00. The appellants' motions for new trial and for judgment n.o.v. were denied and judgment was entered on the verdict. An appeal has been taken to this court from the judgment of the court below.

The appellees presented testimony at trial by Jonathan Tabas, a registered engineer and land surveyor, who testified that the driveway was the main contributor to the problems connected with surface water. He also concluded that the installation of a french drain was necessary as well as removal and proper construction of the driveway. His estimate of the cost for correcting the problem of excess water was $50,738.00.[1] The appellants' expert witness, Mr.

---

1. Mr. Tabas testified as follows concerning the cost of correcting the water problem.

 A. This is a cost estimate for the construction of a french drain which was proposed in my memorandum. I believe it was dated October the 21st. It includes the excavation, removal of dirt in order to construct a french drain, disposing of that dirt, placement

Froshour, estimated that it would cost approximately $10,-000. to $12,000.00 to remedy the situation.

■ In our opinion, the appellees, the plaintiffs below, did not properly establish damages. The measure of damages for breach of contract in the construction of a house containing defects is set forth in *Gadbois v. Leb–Co. Builders, Inc.*, 312 Pa.Super. 144, 152, 458 A.2d 555, 559 (1983) wherein we stated:

> The measure of damages in cases where a homeowner sues for defective construction is the difference between the market value of the house as constructed and the market value that the house would have had if constructed as promised, with the qualification that if it is reasonably practical to cure the defects in construction by repair, and if the cost of repairs does not exceed the difference in market value, then the measure of damages is the cost of repairs.

In the instant case, the appellees presented no evidence whatsoever as to the value of their house as constructed with all of its water problems, and the value it would have had with proper drainage. Only by establishing probable diminution in value because of the improper grading and

of crushed stone in the excavated trench of the french drain, placing or providing and placing for an underdrain pipe or what would be a four inch perforated pipe to allow the water to enter into the pipe and drain off into that trench connecting that pipe to the street, getting township permits and approvals for that connection, grading the lawn after the completion of work and the area around the house which would obviously be disturbed by construction activities, placement of top soil, sod, fertilizing, demolition of the existing driveway and regrading of the property to allow for positive drainage plus an appropriate amount for design and inspection fees, a total of which would be approximately fifty thousand eight hundred dollars. The exact number on my estimate is $50,738.00.

Q. Now, when you talk about the removal of the driveway and the regrading of the property would that in effect put in the swales that aren't there now?

A. Correct. That includes the installation of the swales so that the water will flow freely on the surface of the ground towards Atkinson Lane.

Q. And would this in your opinion resolve the problems on the Freeman property?

A. Yes.

driveway construction, would it be possible to determine if the damages awarded in the amount of $45,785. were appropriate. The cost of repairs of $45,785. would be excessive if the house had not diminished in value to at least that extent.

In the recent case of *Douglass v. Licciardi Construction Co., Inc.*, 386 Pa.Super. 292, 562 A.2d 913, 915–916 (1989), we stated:

Pennsylvania courts, consistently therewith, have generally allowed damages for incomplete or defective performance of a building contract to be measured by the cost of completing the work or correcting the defects by another contractor. *See, e.g.: Ecksel v. Orleans Construction Co.*, 360 Pa.Super. 119, 519 A.2d 1021 (1987); *Steinhauer v. Wilson*, 336 Pa.Super. 155, 485 A.2d 477 (1984); *Brourman v. Bova*, 198 Pa.Super. 279, 182 A.2d 245 (1962). *It is only where the cost of completing performance or of remedying the defects is clearly disproportionate to the probable loss in value to the injured party that damages will be measured by the difference between the market price that the property would have had without the defects and the market price of the property with the defects.* Although articulating the rule in a slightly different manner, the Court acknowledged and followed the same principle in *Gadbois v. Leb–Co. Builders, Inc.*, 312 Pa.Super. 144, 458 A.2d 555 (1983). Where the cost of remedying the defects in construction is not clearly disproportionate to the probable loss in value to the injured party, the breaching contractor cannot require that the injured party's damages be measured by the difference between the market price of the property without the defects and the price of the property with the defects. (Emphasis added.) [2]

2. In *Douglass v. Licciardi Construction Co., supra,* we stated with reference to Restatement (Second) of Contracts § 348(2) quoting from comment c:

Sometimes, especially if the performance is defective as distinguished from incomplete, it may not be possible to prove the loss in value to the injured party with reasonable certainty. In that case he

■ The appellees did not establish what the value of their house would have been had the surface water problem not existed, and its diminished value because of the water problem. The jury entered a verdict based on the cost of correcting the situation as that was the only issue submitted to it. The verdict in the amount of $45,785.00 represented almost 48% of the cost of the house and it is clear in these circumstances that the jury should have had some idea as to the diminution of value in order to avoid a windfall to the appellants. The rule set forth in *Douglass v. Licciardi Construction Co., Inc., supra,* requires that the cost of repairs be clearly disproportionate to the probable loss in value before damages are limited to the loss in value. Therefore, there must be some evidence produced by the plaintiff of the reduction in value, although it need not be shown with exactitude. There must be a balancing between the probable diminution in value, which is often quite nebulous, and the cost of repairs which may be determined with greater accuracy. However, there must be some reasonable basis for determining reduction in value, before a judgment may be made that the cost of repairs is a

can usually recover damages based on the cost to remedy the defects ...

*Sometimes, however, such a large part of the cost to remedy the defects consists of the cost to undo what has been improperly done that the cost to remedy the defects will be clearly disproportionate to the probable loss in value to the injured party. Damages based on the cost to remedy the defects would then give the injured party a recovery greatly in excess of the loss in value to him and result in a substantial windfall.* Such an award will not be made. It is sometimes said that the award would involve "economic waste," but this is a misleading expression since an injured party will not, even if awarded an excessive amount of damages, usually pay to have the defects remedied if to do so will cost him more than the resulting increase in value to him. *If an award based on the cost to remedy the defects would clearly be excessive and the injured party does not prove the actual loss in value to him, damages will be based instead on the difference between the market price that the property would have had without the defects and the market price of the property with the defects.* This diminution in market price is the least possible loss in value to the injured party, since he could always sell the property on the market even if it had no special value to him. (Emphasis added.)

386 Pa.Super. 292, 562 A.2d 915.

proper measure of damages, where the required repairs to a new house represent a high percentage of the cost of the house.[3]

The court below, in its opinion, determined that there was no evidence presented by any of the parties that *the repairs exceeded the fair market value of the property*, and that, therefore, *Gadbois v. Leb–Co. Builders, supra,* was inapplicable. In our view, the court has misread *Gadbois*. It is not where repairs exceed the fair market value of the property that the measure of damages is the diminution of value, it is where the cost of repairs exceeds the diminution of value, that the cost of repairs is *not* the measure of damages. The court below has misconstrued the measure of damages and the issue is properly raised in the appellants' motion for new trial.

■ A secondary reason for awarding a new trial is that the court erred in admitting the testimony of Jonathan Tabas as an expert when his written report was not given to counsel for the appellants until the day trial began. This resulted in prejudice to the appellants. The complaint sought damages in an amount in excess of $7,000. and less than $20,000. In their answer to interrogatories, the plaintiffs stated that their expert would be "Carroll Engineering" who would testify as to the "cause of swamp-like conditions on plaintiffs' property" and various repairmen. There was no indication that they would call Jonathan Tabas as a witness.[4]

3. If at trial the appellees had established that without the drainage problems their house would have had a probable value of $120,000, but with the situation existing it had a market value of only $90,000, then the verdict of $45,785 would have resulted in a windfall to them of $15,785, the difference between the loss in value and the amount of the verdict. This, of course, is only an illustration as no evidence was submitted by the appellees concerning the reduction in the value of their home because of the defects in grading and the driveway construction.

4. The Carroll Engineering report of July 6, 1986 set forth a second and third option for correcting the situation as follows:

A second option is the construction of the originally designed swale. This option, while permitting a free flow of water to the street, would be the most disruptive on a short term basis, as it

In March, 1987, about 1½ years before trial, the plaintiffs answered the following interrogatories:

19. Please attach any and all bills in the possession of Plaintiff which indicate that it would cost Plaintiff $7,000 to regrade their property or reinstall the driveway. If not, on what do you base your estimate?

[ANSWER] See repair estimate of Marrazzo Landscaping dated April 1, 1986; this estimate was delivered in April, 1986. This price is no longer effective. It is believed that the Marrazzo Landscaping estimate will increase approximately 10% since the time of the estimate. Furthermore, the estimate will include replacement of sod which has died due to swamp-like conditions. Plaintiffs do not yet have an estimate for replacement of sod, but believe that the cost will exceed $1500.00. Driveway estimate to be supplied. Plaintiffs have received a verbal estimate from Stanley Paving Company to remove and reinstall the driveway for $3000.00.

The Marrazzo Landscaping Company estimate of April 1, 1986, which was attached to the answers to the interrogatories, estimated the cost of regrading and installation of new sod in the amount of $1,140.00. The cost of supplying and installing the French drain was $3,025.00 for a total of $4,165.00 which the plaintiffs believed would be increased by 10% to a total of approximately $4,580.00. The appellees also added $1,500.00 for additional sod and $3,000.00 to remove and replace the driveway. Their total estimate for

would require regrading of your side yard, a portion of the rear yard, and a major portion of your driveway.

The third option consists of the work suggested in Option No. 2 and the installation of the underdrain (without the inlets) proposed by Toll Brothers. This option would provide free drainage during rain storms and also address the concern of saturated soils after a rain storm, and would, therefore, appear to be the most ideal solution.

At trial, the appellees' expert, Jonathan Tabas, who had no connection with Carroll Engineering, testified that his memorandum of October 21, 1988, stated that he essentially agreed with the comments and recommendations set forth in the Carroll Engineering report. The Carroll Engineering Company estimated that it would cost about $6,800. to correct the water problem. (N.T. 267).

grading, removal and replacement of the driveway and installation of new sod was approximately $9,080.00. The estimate of Carroll Engineering Company, their expert, was $6,800.00.

It was not until Jonathan Tabas prepared his report dated October 2, 1988, on behalf of the appellees did it appear that their alleged damages exceeded $50,000.00. The start of trial was postponed for approximately 30 days at the request of the appellees for the ostensible reason of their obtaining the presence of Jamie Williams as an expert.[5] Shortly before trial began, counsel for the plaintiffs identified Mr. Tabas as their expert. On the day trial commenced, counsel for the defendants was furnished with a copy of Mr. Tabas' report. At trial, counsel for the appellants objected to his testifying on the basis of surprise and the objection was overruled by the court since counsel had an opportunity to read the report.

Counsel for the appellees failed to comply with Pa.R.C.P. 4003.5(a)(1) which provides that the parties through interrogatories may require "any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify ..." The rule further provides in § 4003.5(b):

(b) If the identity of an expert witness is not disclosed in compliance with subdivision (a)(1) of this rule, he shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

The appellees had the duty to identify their expert witness, Mr. Tabas, in response to the defendants' interrogatories. *Curran v. Stradley, Ronan, Stevens & Young,* 361 Pa.Super. 17, 521 A.2d 451 (1987). Instead, they only

---

**5.** Mr. Williams testified at trial as to the cost of materials but not as an expert.

identified Carroll Engineering as their expert and unnamed workman. Adequate notice to the defendants was not given where plaintiffs' counsel waited until the day trial commenced to furnish counsel for the defendants a written copy of the expert's report. We have held that the giving of five months notice that a person will be called as an expert is adequate, but noted that "the purpose of Rule 4003.5 is to prevent the unfairness that would occur if one party would be unable to counter the expertise of a surprise witness produced at the last minute by the opposing party." *Jistarri v. Nappi*, 378 Pa.Super. 583, 596, 549 A.2d 210, 217 (1988).

Mr. Tabas had been on the appellees' property at least two times between 1984 and 1988 at the request of the appellees. There were no extenuating circumstances shown that would justify nondisclosure of Mr. Tabas as an expert witness until the eve of trial. Perhaps we would not find his testimony so prejudicial to the appellants if his estimate of damages did not so greatly exceed the amount of damages that the appellants reasonably anticipating defending against up to the date of trial. The plaintiffs had a duty to timely supplement the answers to their interrogatories pertaining to the identity of the expert witness under Pa.R.C.P. 4007.4(1) which provides that: "[a] party is under a duty seasonably to supplement his response with respect to any question directly addressed to ... the identity of each person expected to be called as an expert witness at trial ..." The prejudice resulting to the appellants by the untimely identification of Mr. Tabas and the production of his report, requires the grant of a new trial.

 Finally, a new trial is mandated as to damages as the verdict shocks the conscience of this court because of its excessiveness. We may grant a new trial on the ground that a verdict is excessive and contrary to the weight of the evidence where it shocks the court's sense of justice and makes a new trial imperative so that right may be given another opportunity to prevail. *Burrell v. Philadelphia Electric Co.*, 438 Pa. 286, 265 A.2d 516 (1970); *Phillips v.*

*Schoenberger*, 369 Pa.Super. 52, 534 A.2d 1075 (1987). Mr. Tabas testified to the cost of replacing the driveway, grading the property and installing a french drain on the basis of what other persons told him would be the cost. He had no personal experience in buying the supplies that would be used in constructing the driveway such as crushed stone or in items involved in regarding such as sod. Mr. Tabas testified that he had never supervised the installation or removal of a driveway on a residential property. The estimate by Carroll Engineering to correct the problem, including the installation of a french drain, was $6,800.00. Inflation may be a factor, but we cannot agree that the cost could increase five times from the date of the estimates up to the time of trial. Although the verdict is excessive, the issue of liability of the appellants was properly before the jury. The verdict as to liability of the appellants shall remain.

Judgment reversed and case remanded to the court below for a new trial limited to the issue of damages. We relinquish jurisdiction.