608 A.2d 557

**Donald J. GLOVIAK and Deborah J. Gloviak, Appellee,**

**v.**

**TUCCI CONSTRUCTION COMPANY, INC., Dominic Tucci, Trading as Tucci Construction Company, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 4, 1991.

Filed May 18, 1992.

124

Brian R. Barlow, Plymouth Meeting, for appellant.

William R. Cooper, Lansdale, for appellee.

Before WIEAND, JOHNSON and HOFFMAN, JJ.

WIEAND, Judge:

In this action to recover damages for a defectively constructed, residential fireplace, the trial court, sitting without a jury, returned a verdict in favor of the homeowners and against the contractors for seven thousand, five hundred ($7,500.00) dollars. Post-trial motions were filed by the contractor-defendants and denied by the trial court. From the judgment entered on the verdict, the instant appeal was filed in which the contractors allege various trial errors.

Donald Gloviak and Deborah Gloviak, husband and wife, purchased a residence which was being constructed by Dominic Tucci and Tucci Construction Co., Inc. in Hatfield, Montgomery County, for $84,500.00. Settlement was held on September 22, 1983, and the Gloviaks moved in soon thereafter. In November, 1983, they built a fire in the fireplace for the first time. Within ten minutes after the fire started, there was a loud noise, and a crack appeared in eight rows of brick in the center of the fireplace. In addition, smoke from the fire was not properly ventilated and backed up into the home. Tucci was notified and promised to correct an apparent defect in the fireplace. By August, 1984, the repairs had not been made. At that time, Tucci agreed in writing to correct five defects in the residence, including the fireplace. Some repairs were made, but the fireplace remained uncorrected. On September 17, 1985, Tucci came to the home to repair the fireplace, but a dispute arose and the repairs were not made. By that time, additional damage to the fireplace was evident.

In January, 1987, the Gloviaks hired another contractor, Terry Fox, to repair the fireplace. He removed and replaced all cracked bricks at a cost of five hundred ($500.00) dollars. When the Gloviaks used the fireplace, however, the bricks again cracked. The Gloviaks then hired Thomas Antrobus, an engineer, but he died after completing a report and was replaced by Kevin Flynn, an associate of Antrobus. Flynn concluded that the cracking of the bricks was due to a faulty design in that the original contractor

had failed to use a compressible material in the fireplace to allow for expansion. The fireplace also contained an under-sized flue. The pulling away of stucco from the outside of the chimney he attributed to an inadequate bonding. He recommended that the fireplace, including the chimney, be dismantled and replaced. He estimated the cost to be $9,700.00. Of this amount, approximately $2,800.00 represented the cost of tearing down and removing the existing fireplace. Defendant, Dominic Tucci, sought to rebut Flynn's testimony at trial. He testified that the cost of removing the existing fireplace and building a new one would be approximately $1,500.00. No party offered evidence of the diminution in value of the home caused by the defective fireplace. The trial court, as we have already observed, awarded damages of $7,500.00.

■ Appellants contend that the plaintiff-owners failed to prove a breach of an implied warranty of habitability and that the trial court's verdict was contrary to the weight of the evidence. However, the trial court's verdict was not based upon a breach of an implied warranty of habitability but upon a breach of the terms of the construction contract. A breach of the construction contract was established by substantial evidence, so that it cannot be said that the trial court's verdict was contrary to the weight thereof. It does not shock the judicial conscience. See: *Thompson v. City of Philadelphia*, 507 Pa. 592, 598, 493 A.2d 669, 672 (1985).

■ Appellants contend next that the trial court erred when it allowed Kevin Flynn to give expert opinion testimony regarding the defective construction of the fireplace. However, "[t]he Pennsylvania standard of qualification for an expert witness is a liberal one." *Rutter v. Northeastern Beaver County School Dist.*, 496 Pa. 590, 597–598, 437 A.2d 1198, 1201 (1981). The courts have said that if a witness has a reasonable pretension to specialized knowledge on the subject under investigation, he or she may be permitted to give expert opinion testimony. *Ruzzi v. Butler Petroleum Co.*, 527 Pa. 1, 10, 588 A.2d 1, 5 (1991); *Palmer v. Lapp*, 392 Pa.Super. 21, 27, 572 A.2d 12, 15

(1990); *Yoho v. Stack,* 373 Pa.Super. 77, 83, 540 A.2d 307, 310 (1988). To give expert opinion testimony, a witness need not possess all the knowledge in his or her field. *Yoho v. Stack, supra,* 373 Pa.Superior Ct. at 83, 540 A.2d at 310; *Pratt v. Stein,* 298 Pa.Super. 92, 152–153, 444 A.2d 674, 706 (1982). Whether a witness has been properly qualified to express an expert opinion is generally vested in the sound discretion of the trial court. *Houston v. Canon Bowl, Inc.,* 443 Pa. 383, 386, 278 A.2d 908, 910 (1971); *Gottfried v. American Can Co.,* 339 Pa.Super. 403, 410, 489 A.2d 222, 226 (1985).

In the instant case, Flynn held a bachelor's degree in civil engineering and a master's degree in structural engineering and had worked in the design and construction of residential buildings, offices, shopping centers and other structures continuously after 1977. He was licensed in both Pennsylvania and New Jersey. In view of these credentials, it cannot be said that the trial court abused its discretion when it allowed Flynn to testify as an expert.

Appellants argue, however, that Flynn did not examine the fireplace until after repairs had been made and some bricks had been replaced by Terry Fox in 1987. They contend that for this reason Flynn should not have been allowed to testify regarding defective construction at the time of initial construction. There is no merit in this argument. The condition which Flynn observed and to which he testified had not been altered by Fox' replacement of bricks on the exterior of the fireplace. Flynn's testimony pertained to the design and construction of the fireplace, for which appellants had been responsible. This had not been altered by the superficial repairs made by Fox.

Finally, we reject appellants' contention that the trial court adopted an improper measure of damages. In *Douglass v. Licciardi Construction Co., Inc.,* 386 Pa.Super. 292, 562 A.2d 913 (1989), the measure of damages was stated as follows:

Pennsylvania courts ... have generally allowed damages for incomplete or defective performance of a build-

ing contract to be measured by the cost of completing the work or correcting the defects by another contractor. See, e.g.: *Ecksel v. Orleans Construction Co.*, 360 Pa.Super. 119, 519 A.2d 1021 (1987); *Steinhauer v. Wilson*, 336 Pa.Super. 155, 485 A.2d 477 (1984); *Brourman v. Bova*, 198 Pa.Super. 279, 182 A.2d 245 (1962). It is only where the cost of completing performance or of remedying the defects is clearly disproportionate to the probable loss in value to the injured party that damages will be measured by the difference between the market price that the property would have had without the defects and the market price of the property with the defects.

*Id.* 386 Pa.Super. at 297, 562 A.2d at 915–916. See also: *Gadbois v. Leb–Co Builders, Inc.*, 312 Pa.Super. 144, 152, 458 A.2d 555, 559 (1983), *appeal dismissed,* 504 Pa. 507, 475 A.2d 742 (1984).

Appellants' reliance on *Freeman v. Maple Point, Inc.*, 393 Pa.Super. 427, 574 A.2d 684 (1990), is misplaced. There, the Superior Court set aside an award based on the cost of correcting a water problem because such cost ($45,785.00) represented 48% of the cost of the house. It was because the award was grossly disproportionate on its face that the Court required some evidence of the diminution in value of the property as a result of the surface water problem. *Id.*, 393 Pa.Superior Ct. at 432–433, 574 A.2d at 687. The facts in the instant case are different. An award based on repair costs of $7,500.00 was not patently disproportionate to the sum of $84,500.00 paid for the house by the appellee-homeowners. They did not receive a windfall by an award of the cost of repairing the defective fireplace. Therefore, it was not essential that the homeowners, in order to recover the costs of making repairs, prove by separate evidence that the repair costs were not grossly disproportionate to the diminution in value caused by the defective fireplace. If appellant-contractors deemed the cost of making repairs disproportionate to the diminution in value of the home, the burden was on them to introduce evidence

establishing that fact. This they did not do. The only evidence offered by the appellant-contractors which pertained to the amount of appellees' damages was that the defect could be corrected by repairs costing approximately fifteen hundred ($1,500.00) dollars. Thus, the measure of damages submitted to the court by both sides was the cost of repairing the defective fireplace, and it was for the trial court to determine the credibility of the parties' estimates. Under these circumstances, appellants cannot complain that the trial court made an award to the homeowners for the cost of repairing their fireplace in the amount of seven thousand, five hundred ($7,500.00) dollars. See: *Fetzer v. Vishneski*, 399 Pa.Super. 218, 225–226, 582 A.2d 23, 27 (1990), *allocatur denied*, 527 Pa. 666, 593 A.2d 842 (1991).

Appellants' contention that the Gloviaks failed to mitigate damages is also lacking in merit. Although a party suffering a loss has a duty to make reasonable efforts to mitigate damages, *Ecksel v. Orleans Construction Co.*, 360 Pa.Super. 119, 132, 519 A.2d 1021, 1028 (1987), here the record demonstrates that the delay in making repairs was attributable to the contractors who repeatedly failed to make good on a promise to repair the fireplace. When these repairs were not made, the homeowners acted reasonably to have them done by others. The trial court did not err when it refused to find that the homeowners had violated a duty to mitigate damages.

Because the trial court's determination is fully supported by competent evidence and because there was no trial error, the judgment in favor of the homeowners must be, as it is,

Affirmed.

HOFFMAN, J., concurs in the result.