J-S36004-20

2020 PA Super 263

| | |
|---|---|
| DAVID WOULLARD AND TAMMY WOULLARD | : IN THE SUPERIOR COURT OF : PENNSYLVANIA : : : |
| v. | : : : : |
| SANNER CONCRETE AND SUPPLY, SANNER MASONRY AND EXCAVATION, AND SCOTT SANNER D/B/A SCOTT SANNER MASONRY, KEITH WELCH D/B/A NEW OUTLOOK ENTERPRISE | : : No. 224 WDA 2020 : : : : : : |
| APPEAL OF: SANNER MASONRY AND EXCAVATION, INC. AND SANNER CONCRETE AND SUPPLY | : : : |

Appeal from the Judgment Entered June 22, 2020
In the Court of Common Pleas of Somerset County Civil Division at
No(s):  No. 490 Civil 2013

BEFORE:   OLSON, J., KING, J., and PELLEGRINI, J.[*]

OPINION BY OLSON, J.:                              FILED OCTOBER 30, 2020

Appellants, Sanner Concrete and Supply ("Sanner Concrete") and Sanner Masonry and Excavation ("Sanner Masonry"), appeal from the judgment entered June 22, 2020, in favor of David Woullard and Tammy Woullard (collectively, "Woullard").[1]  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The record demonstrates that Appellants appealed the order entered January 7, 2020, in which the trial court denied Appellants' post-trial motion.  In a per curiam order, this Court directed Appellants to praecipe for entry of the judgment.  Judgment against all parties was entered on June 22, 2020, as

The trial court summarized the procedural history as follows:

On August 6, 2013, [Woullard] filed a complaint against Andrea and Daniel Faye doing business as DP Systems ("DP Systems"), Sanner Concrete[,] Sanner Masonry[,] Scott Sanner [doing business as Scott Sanner Masonry ("Scott Sanner")], and Keith Welch doing business as New Outlook Enterprise [("Welch")]. [Woullard] claimed that each of the defendants breached their respective contracts related to the construction of Woullard's home and a detached garage located [along] Pony Farm Road, Meyersdale, [Pennsylvania] 15552 [("the home")].

On September 16, 2013, [Woullard] filed an amended complaint, raising claims against all the defendants regarding breach of contract, promissory estoppel, and unjust enrichment. [The amended complaint] also added [a] claim for negligent misrepresentation against DP Systems[ and claims for conversion against DP Systems, Sanner Masonry, and Sanner Concrete.]

On October 10, 2013, Welch filed an answer and new matter to the amended complaint and a counterclaim, alleging that, inter alia, [Woullard] terminated an agreement with Welch regarding project management services for the construction of [the home] prior to the completion of the project. In his new matter, Welch also averred that a written release[,] which the parties executed on March 26, 2012[, barred Woullard's claim].

Likewise, on October 13, 2013, DP Systems filed [its] answer and new matter to [the] amended complaint and [a] counterclaim, wherein it alleged that [Woullard] breached an agreement with DP Systems regarding the installation of electrical components at the [home] during its construction. [Woullard, in a second amended

_____

discussed infra. Therefore, Appellants' notice of appeal is deemed filed on June 22, 2020. See Pa.R.A.P. 905 (stating, "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."); see also Nazarak v. Waite, 216 A.3d 1093, 1098 n.1 (Pa. Super. 2019) (stating, "an appeal does not properly lie from an order denying post-trial motions, but rather upon judgment entered following disposition of post-trial motions" (citation and original quotation marks omitted)). The caption has been amended accordingly.

complaint filed February 6, 2015, raised the aforementioned claims against all defendants but omitted the claims of promissory estoppel and unjust enrichment against Scott Sanner.]

Scott Sanner filed an answer with new matter and [a] counterclaim to [Woullard's] second amended complaint, alleging that, inter alia, [Woullard] failed to remit payment for work performed by Scott Sanner related to the construction of fireplaces in the [home].

On May 16, 2016, DP Systems notified the [trial] court that a bankruptcy petition had been filed on [its] behalf in the United States Bankruptcy Court for the Western District of Pennsylvania[. DP Systems] requested a stay in the matters pending against [it]. On December 11, 2017, DP Systems filed a stipulation to amend the pleadings, advising [the trial] court that the bankruptcy proceedings fully discharged [Woullard's] claim against [] DP [S]ystems and that [DP Systems'] counterclaim in the [] instant matter should be stricken.

[Appellants] filed their answer to [the] second amended complaint and [a] counterclaim on February 1, 2018, alleging, inter alia, that [Woullard] failed to pay [Sanner Concrete] for work performed during the construction of the [home. Appellants sought] $10,078.24 in related damages.

On June 21, 2018, Welch filed a motion for partial summary judgment[,] seeking dismissal of [Woullard's] claims regarding promissory estoppel and unjust enrichment, and partial dismissal of [Woullard's] breach of contract [claim]. According to Welch, [Woullard's] breach of contract claim against him erroneously [sought to hold] Welch liable for work performed by independent contractors hired by [Woullard], and for work completed after Welch and [Woullard] signed a release agreement on March 26, 2012. Following a hearing in the matter on August 1, 2018, [the trial court] granted [] Welch's motion for partial summary judgment with respect to the counts related to promissory estoppel and unjust enrichment, but denied the motion with respect to [Woullard's] breach of contract claim against Welch.

At a pretrial conference hearing held on August 1, 2018, the [trial] court was notified that [] Scott Sanner did not intend to offer a defense in the instant matter, and he intended to file for bankruptcy. No bankruptcy petition has been filed.

Trial Court Opinion, 10/4/19, at 1-4 (extraneous capitalization, record citations, and footnote omitted).

The trial court conducted a non-jury trial from May 22, 2019, to May 24, 2019, at the conclusion of which, Appellants, as well as Welch and Woullard, submitted proposed findings of fact and conclusions of law. On October 4, 2019, the trial court entered a non-jury verdict in favor of Woullard and against Appellants, Scott Sanner, and Welch.[2] In entering its non-jury verdict, the trial court made the following findings of fact pertinent to Appellants:

I. General Findings of Fact

1.  [Woullard] own[s] and reside[s] in [the] home located [along] Pony Farm Road, Meyersdale, [Pennsylvania]. The construction of [the] home [] is the subject of the instant litigation. Specifically, [Woullard's] claims arise from construction related to the home's stonework, back porch, fireplaces, windows, staircase, and the flooring in the garage.

2.  To construct [the home, Woullard] acquired architectural drawings, and in their capacity as general contractor hired several subcontractors to complete various aspects of the construction.

3.  Adam Sanner does business as both Sanner Concrete [] and Sanner Masonry[.] Sanner Concrete appears to be a fictitious name and Sanner Masonry is a corporation.

4.  [Woullard] hired [] Sanner Concrete to install stonework on the exterior of the home.

_____

[2] The non-jury verdict awarded Woullard damages as follows: $53,971.13 in damages against Sanner Concrete, $39,700.00 in damages against Sanner Masonry, $117,000.00 in damages against Scott Sanner, and $3,800.00 in damages against Welch. Trial Court Order, 10/4/19.

- 4 -

5.    [Woullard] hired [] Sanner Masonry to perform work on the back porch and garage floor [of the home].

6.    [Woullard] hired [] Scott Sanner to construct three fireplaces.

7.    On August 22, 2011, [Woullard] contracted with [Welch], doing business as New Outlook Enterprise, to serve as a project manager, which required him to oversee and complete portions of the construction.

II.  <u>Findings of Fact: Stone[ ]Veneer Work by Sanner Concrete</u>

8.    [Woullard] reached a verbal agreement with Sanner Concrete to install 1609 square feet of stacked[ ]stone veneer, which was to be purchased by [Woullard], on the exterior of the home for approximately $16,884.00[. Installation] began in the late summer of 2012.

9.    The stacked stone did not adhere and began to detach from the exterior of [the] home.

10.  The stacked stone veneer did not adhere to the home because Sanner Concrete failed to notch or corrugate the scratch coat underlying the stacked stone, which is a gross deviation from industry standard.

11.  [Woullard] contacted Sanner Concrete about the issue several times, but [Sanner Concrete] neither returned [Woullard's] phone calls, nor offered to remedy the loose stone.

12.  Stacked stone is difficult to patch because of the variation in the color of the manufactured stone over time, thereby creating a lack of aesthetic uniformity. Stacked stone cannot be reused because it is thin and removing existing mortar is too labor intensive and would cause the stone to break.

13.  [Woullard's] only remedy for the defective stone veneer is a complete removal of the loose stone and installation of a new stone veneer.

14.  The cost to remove [] the stacked stone in its entirety [and replace it] with new stone – 2700 square feet of stone - is $61,000.00.

III.  <u>Findings of Fact: Sanner Masonry's Work on the Back Porch</u>

15. [Woullard] executed an oral agreement with Sanner Masonry, requiring Sanner Masonry to perform work on the back porch of the [] home.

16. Within months of completion, the concrete began to crack and detach around the edges of the porch. Cracks formed in the concrete throughout the center of the porch as well.

17. [Woullard] notified [] Sanner Masonry regarding the substantial cracking in both the concrete and aggregate surface on the back porch, but Sanner Masonry refused to repair the damage.

18. Sanner Masonry failed to install the requisite expansion and control joints in the back porch concrete slab. The failure to install such joints resulted in extensive cracking throughout the back porch concrete slab. Sanner Masonry also failed to install proper reinforcement in the back porch according to industry standards.

19. The only way to remedy the defective construction of the back porch is to completely remove the current aggregate surface and replace it. The cost to complete this work is $39,700.00, which includes the demolition and removal of the current aggregate surface.

IV. Findings of Fact: Sanner Masonry's Work on the Garage Floor

20. [Woullard] engaged Sanner Masonry to construct the garage, including its floor, at a cost of approximately $4,591.86.

21. The sealant that Sanner Masonry placed on the floor is aesthetically displeasing to [Woullard]. However, the floor is fully functional and drains properly.

22. [Woullard] contacted Sanner Masonry and expressed [] dissatisfaction.

23. When contacted by [Woullard] regarding the issues with the garage floor, Sanner Masonry indicated that [it] would accept a reduced price of $4,030.00.

24. [Woullard] sent Sanner Masonry a $4,030.00 check, which represent[ed] a $561.86 reduction from the original invoice, and Sanner Masonry accepted that lesser amount.

### V. [Sanner Concrete's] Counterclaims: Unpaid Invoices

25. [Woullard] failed to pay Sanner Concrete the contract price of [$]7,028.87 for Sanner Concrete's installation of a sidewalk, back steps, and window-well caps.

26. When Sanner Concrete installed the sidewalk, back steps, and window-well caps, its performance adhered to the contract.

27. It was not Sanner Concrete's duty to ensure that there was a smooth transition between the sidewalk and the driveway.

Trial Court Opinion, 10/4/19, at 4-6 (record citations omitted).

On October 15, 2019, Appellants filed a post-trial motion. The trial court entertained argument on the motion and subsequently permitted Appellants and Woullard to submit briefs pertaining to the motion. On January 7, 2020, the trial court denied Appellants' post-trial motion. This appeal followed.[3]

Appellants raise the following issues for our review:

1. Whether the trial court committed an error of law by holding that the weighing of diminution in value against the cost to repair the defects is limited to cases involving a single

_____

[3] Appellants and the trial court complied with Pa.R.A.P. 1925. In a May 21, 2020 per curiam order, this Court directed Appellants to praecipe to enter judgment in order to perfect the appeal. Appellants responded by filing a copy of the trial court docket demonstrating the entry of judgment on May 26, 2020, against Sanner Concrete and Sanner Masonry. In a June 18, 2020 per curiam order, this Court directed Appellants to praecipe to enter judgment against Scott Sanner and Welch. Appellants responded by filing a copy of the trial court docket, but the docket sheet did not demonstrate the entry of judgment against Scott Sanner and Welch. In a June 25, 2020 per curiam order, this Court directed Appellants to file a certified copy of the trial court docket reflecting the entry of judgment. Appellants filed a copy of the trial court docket demonstrating the entry of judgment on June 22, 2020, against Scott Sanner and Welch. Consequently, Appellants notice of appeal is deemed to have been filed as of June 22, 2020, when judgement was entered against all parties. See Rule 905(a)(5).

builder-vendor defendant where the underlying claim is a breach of the implied warranty of habitability[?]

2. Whether the trial court committed [legal error] by not requiring [Woullard] to present evidence of diminution in value, bypassing several steps, and shifting the burden to Appellants to refute [Woullard's] cost-of-repair evidence of damages [in violation of established case law for calculating awards in defective construction litigation?]

3. Whether the trial court abused its discretion when it denied Appellants' request for a new trial strictly on the issues of damages[, including an opportunity to present diminution-in-value evidence,] when the trial court failed to follow the process/analysis established by case[ ]law for awarding damages in a defective construction case[?]

Appellants' Amended Brief at 2-3.

Appellants' first and second issues, in sum, challenge the trial court's damage award, arguing that the trial court erred as a matter of law in calculating the award based upon the cost to repair the defects and rejecting a measurement of damages that looks to the diminution in value of the home attributable to the aggregate defects. Id. at 12-43.

Our standard of review and scope of review when considering challenges to a non-jury verdict are well-settled.

Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review[,] the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

Century Indem. Co. v. OneBeacon Ins. Co., 173 A.3d 784, 802 (Pa. Super.

2017) (citations omitted), appeal denied, 190 A.3d 1129 (Pa. 2018).

> [T]he measure of damages in cases where a homeowner sues for defective construction is the difference between the market value of the house as constructed and the market value that the house would have [] if constructed as promised, with the qualification that if it is reasonably practical to cure the defects in construction by repairs, and if the cost of repairs does not exceed the difference in market value, then the measure of damages is the cost of repairs.

Gadbois v. Leb-Co. Builders, Inc., 458 A.2d 555, 559 (Pa. Super. 1983),

appeal dismissed, 475 A.2d 742 (Pa. 1984); see also Pennsylvania Dep't

of Gen. Servs. v. U.S. Mineral Prods. Co., 898 A.2d 590, 596 (Pa. 2006)

(stating that when the defect is reparable, damages are limited to the lesser

of the cost of repair or the diminution in market value of the affected

property).

This Court, in Freeman v. Maple Point, Inc., reiterated that the

trier-of-fact must avoid awarding damages that amount to a windfall for the

injured party. Freeman v. Maple Point, Inc., 574 A.2d 684, 687 (Pa. Super.

1990). As the Freeman Court explained, the cost to repair the defective

construction often includes a large sum to undo the improper work and, in

some cases, results in a cost of repair that is clearly disproportionate to the

probable diminution in value of the real property. Freeman, 574 A.2d at 687

n.2. The rationale behind limiting damages and, thus, avoiding a windfall to

the injured party, is that "an injured party will not, even if awarded an

excessive amount of damages, usually pay to have the defects remedied if to

do so will cost him [or her] more than the resulting increase in value[.]" Id. In cases where the cost of repair is clearly disproportionate to the probable diminution in value, damages will be limited to diminution in value. Id. at 687. The determination of damages is a balancing "between the probable diminution in value, which is often quite nebulous, and the cost of repairs[,] which may be determined with greater accuracy." Id.

Our prior cases offer a framework through which a trial court allocates the burden of proving the diminution in market value of a property that is attributable to a particular construction defect. In establishing a claim for damages when the cost of repair is grossly disproportionate on its face to the market value of the real property, the injured party is required to present evidence of diminution in value of the real property in order to demonstrate that the cost of repair, if awarded as damages, would not result in a windfall to the injured party. Gloviak v. Tucci Constr. Co., Inc., 608 A.2d 557, 560 (Pa. Super. 1992) (stating that where the cost of repair is grossly disproportionate on its face to the market value of the property, the injured party is required to present evidence of the diminution in value of the property); see also Freeman, 574 A.2d at 687. Conversely, where the cost of repair is not grossly disproportionate on its face to the market value of the real property, the injured party is not required to present evidence of diminution in value of the real property. Id. Rather, the burden shifts to the party responsible for the defective construction to demonstrate that the cost of repair is disproportionate to the diminution in value of the real property.

Id.  By way of example, a cost to repair the defective construction that is 48% of the market value of the real property, i.e. the purchase price of the home, is grossly disproportionate on its face to the value of the real property.  Id.  Whereas, a cost to repair the defective construction that is 9% of the market value of the real property is not grossly disproportionate on its face to the value of the real property.  Id.

Here, Appellants contend the trial court erred as a matter of law when it failed to weigh the aggregate costs to repair the defective construction against the diminution in value of the home, when awarding damages, to determine if the costs of repair exceeded the diminution in value and, thus, resulted in a windfall to Woullard.  Appellants' Amended Brief at 13. Appellants assert that the present market value of the home with no defective construction, in 2019, was $528,000.00.  Id. at 21-33.  Appellants argue that the estimate for the total cost of repair in the amount of $273,000.00,[4] which represented the cost to repair all of the defects caused by all of the parties, as allegedly established by Woullard's evidence at trial, amounted to 52% of the home's $528,000.00 market value.  Id. at 22 (emphasis added). Appellants contend that the cost of repair was 52% of the home's market value and, thus, grossly disproportionate on its face to the value of the home.

_____

[4] The trial court calculated the cost to repair all of the defects to be $221,500.00;  $61,000.00 attributed to Sanner Concrete, $39,700.00 attributed to Sanner Masonry, $117,000.00 attributed to Scott Sanner, and $3,800.00 attributed to Welch.

Id.  Appellants assert that Woullard, therefore, was required to present evidence of the diminution in value of the home that was attributable to the defective construction.  Id.  Appellants aver that "[t]his requirement [to present evidence of diminution in value] would [] set a cap on [the] damages [that Woullard] could have been awarded against all defendants and avoided the windfall" that resulted from the total damage award.  Id. at 24.

In awarding damages based upon the individual costs to repair each of the defectively constructed items in the home, the trial court stated,

> the appropriate measure of damages, in this case, is the cost of repair.  [The trial court] need not weigh the diminution in market value against the cost to repair the defects.  That calculation is more appropriate in single [] builder-vendor cases where the underlying claim is a breach of the implied warranty of habitability.  See[] Fetzer[, 582 A.2d at 26] (stating that[] replacement cost and diminution in market value are recognized measures of damages for breach of an implied warranty of habitability) []; [see also Gadbois, 458 A.2d at 555] ([stating that] in an action against a builder for breach of implied warranty of habitability, [the p]laintiffs were entitled to the diminution in market value because repairs were not feasible).
>
> Moreover, to [the] extent [diminution in value] applies outside of the builder-vendor context, "once the homeowner [] presented evidence as to the cost of remedying the defects, the burden is on the contractor to challenge this evidence."  Fetzer, 582 A.2d at 26; see also[ Gloviak, 608 A.2d at 560].  In the case sub judice, the defendants did not present evidence of how each individual defect affected the market value.  The contractor defendants would have had to present an "all else being equal" figure[FN4] to explain the impact of a particular defect on the market value, which they did not do.  Thus, because [the trial court finds] that the defendants failed to establish that the diminution in value is significantly less than the cost of repairs or that such a formula even applies in this factual context, [the trial court declines] to apply the diminution in market value measure of damages.

> [FN4] In a case like this, a party would have [] to offer evidence of the market value of the property only with the particular defect that they caused - without any of the other defects - against the value of the property without any defects at all. Otherwise, apportioning the overall diminution of market value would be excessively speculative.

Trial Court Opinion, 10/4/19, at 20.

Here, Woullard raised claims involving two defects in construction attributable to Sanner Concrete and Sanner Masonry, namely the defective installation of stone veneer on the exterior of the home and the defective construction of the back porch.[5] In examining whether the cost of repair was grossly disproportionate on its face compared to the market value of the home without the defect,[6] each defect and its corresponding cost of repair must be

_____

[5] Woullard raised a claim pertaining to the defective installation of the home's garage floor by Sanner Masonry. The trial court, however, did not award Woullard damages for this defect. Therefore, any challenge as it pertains to this defect is moot.

[6] The record demonstrates that a 2013 appraisal, performed at the request of Citizens National Bank, valued Woullard's total property, which included the home and three acres of land, along with an ancillary building and a barn located on an additional 18.6 acres of land, at $815,000.00. N.T., 5/24/19, at 529-530. By subtracting the values assigned to the ancillary building ($120,000.00), the barn ($30,000.00), and the additional 18.6 acres ($37,200.00) from the $815,000.00 value assigned to the total property, the value of the home without any defects was determined to be $627,800.00. Id. at 529-532. The 2013 appraisal used the sales-comparison method to determine the value of the home, including the ancillary building, barn, and additional acreage. See Plaintiff's Exhibit 44A. In 2019, the same real estate appraiser assessed the value of the home, without the ancillary building, barn, and additional acreage, to be $528,000.00 based upon a sales-comparison analysis in which the real estate appraiser determined the value of the home without any defects in the then-current housing market. N.T., 5/24/19, at

_____

533; see also Plaintiff's Exhibit 44B. The real estate appraiser subtracted $345,000.00 for estimates of the costs to repair the defects, as provided by Woullard, and determined the value of the home with defects to be $183,000.00. N.T., 5/24/19, at 542, 545-546. The real estate appraiser explained that the decrease of $99,800.00 between the 2013 market value of the home with no defects ($627,800.00) and the 2019 market value of the home with no defects ($528,000.00) was the result of economic factors such as downward pricing trends in the then-current housing market. Id. at 535. At trial, when asked what the present market value of the home was currently, the real estate appraiser stated that the market value was $528,000.00. Id. at 537.

In their brief, Appellants acknowledged that the 2013 appraisal value of $627,800.00 reflected the as-promised value of the home without any defects in 2013. Appellants' Amended Brief at 21. Appellants further acknowledged that the 2019 appraisal value of $528,000.00 reflected the value of the home without any defects in 2019 and at the time of trial. Id. Appellants contend, "the 2013 and 2019 values are consistent as to the value of the home with no defects." Id.

The trial court did not make a specific finding of fact as to the value of the home without any defective construction in its October 4, 2019 opinion. The trial court, in its January 7, 2020 opinion denying Appellants' post-trial motion, held, however, that the home's relevant market value was $627,800.00 based upon the 2013 appraisal of the home. Trial Court Opinion, 1/7/20, at 30 n.21 (stating, "[u]nlike the 2019 appraisal, [the trial court finds] the 2013 appraisal a credible reflection of the home's relevant fair market value"). The trial court found the 2013 appraisal value a credible reflection of the home's market value because it used a sales-comparison approach to determine the as-promised value of the home verses the 2019 appraisal, which the trial court characterized as having used the cost-to-repair approach to calculate the as-constructed value of the home. Id. at 32. For purposes of the initial inquiry into whether each cost of repair was grossly disproportionate on its face when compared to the value of the home, we find the trial court's dismissal of the 2019 appraisal as a reflection of the home's market value without any defects to be misplaced. Both the 2013 appraisal and the 2019 appraisal utilized a sales–comparison method to determine an initial as-promised value of the home without any defects; $627,800.00 and $528,000.00, respectively.

considered individually against the market value of the home without the defect. The cost to repair the defective construction of the stone veneer was $61,000.00,[7] which was 12% of the home's $528,000.00 market value. The cost to repair the defective construction of the back porch was $39,700.00, which was 8% of the home's $528,000.00 market value. Therefore, these two damage awards were not grossly disproportionate on their faces when compared individually to the present market value of the home without the corresponding defect.[8] Consequently, we concur with the trial court that

_____

Appellants acknowledged that the 2013 appraised value of the home without any defects ($627,800.00) and the 2019 appraised value of the home without any defects ($528,000.00) are both correct values of the home at different points in time. Appellants' Amended Brief at 21-22. Appellants, therefore, waived any challenge to the trial court's failure to determine, as a finding of fact, the market value of the home without any defects. For purposes of addressing the merits of Appellants' issues, we will use the value of the home with no defects reflected in the 2019 appraisal, that is to say $528,000.00, as the value of the home because it reflects the most current value assigned to the home without any defects and values the home without any defects, based upon a sales-comparison analysis, without consideration of the ancillary building, barn, and additional acreage. We concur with the trial court that, for purposes of demonstrating diminution in value, the 2019 appraisal does not reflect an accurate as-constructed value of the home with defects ($183,000.00) because the appraisal uses an aggregate of the costs to repair the defects, based upon estimates, and does not calculate the diminution in value of the home with consideration of each defect individually.

[7] The outstanding invoices in the amount of $7,028.87, which were due Sanner Concrete and unpaid by Woullard, are not part of our instant calculation because these invoices represent an off-set for payment due and, as such, do not represent any part of the cost of repair.

[8] If we rely on the 2013 appraised value of the home with no defects, $627,800.00, the cost to repair the defective construction of the stone veneer

Woullard was not required to present evidence of diminution in value of the home attributable to the defective construction and that the burden of demonstrating any potential diminution in value shifted to Appellants.

A review of the record demonstrates that Appellants did not present evidence of a diminution in value of the home that was attributable to either the defective installation of the stone veneer or the defective construction of the back porch. Therefore, we discern no error of law in the trial court's award of damages, based upon the costs of repair, in the amounts of $53,971.13 against Sanner Concrete and $39,700.00 against Sanner Masonry.[9] Consequently, Appellants' first and second issues are without merit.

_____

would be 10% of the home's $627,800.00 market value and the cost to repair the defective construction of the back porch would be 6% of the home's $627,800.00 market value. Use of the 2013 appraised value of the home further demonstrates that the cost to repair each defect, individually, is not grossly disproportionate on its face to the market value of the home with no defects.

[9] In contrast to the trial court, we conclude that weighing the cost of repair against the market value of the property for purposes of the threshold "grossly disproportionate on its face" inquiry extends to actions for breach of contract involving repairs or renovations to existing real property or new construction, as well as actions for breach of implied warranty of habitability asserted in the builder-vendor context involving new construction. Although the trial court misstated the need to weigh cost of repair against market value, this oversight is harmless error in the case sub judice because the cost to repair each defect was not grossly disproportionate on its face as compared to the market value of the home without any defects. Because this was the case, the burden of proving diminution in market value to rebut Woullard's cost-of-repair evidence at trial shifted to Appellants. Appellants failed to present diminution-in-value evidence for each aspect of the overall construction project for which they were responsible, and therefore, they are not entitled to relief.

Appellants' third issue challenges the trial court's denial of a new trial limited to damages. Appellants' Amended Brief at 37-43. Appellants contend the trial court abused its discretion in denying their request for a new trial strictly on the issue of damages thereby foreclosing Appellants' ability to present evidence of diminution of value. Id.

In reviewing a trial court's denial of a post-trial motion seeking a new trial, this Court applies a deferential standard of review. Collins v. Cooper, 746 A.2d 615, 617 (Pa. Super. 2000).

> The decision whether to grant or deny a new trial is one that lies within the discretion of the trial court. We will not overturn such a decision unless the trial court grossly abused its discretion or committed an error of law that controlled the outcome of the case.

Id. (quotation marks and citations omitted).

Having identified no error in the trial court's determination that Appellants carried the burden to demonstrate diminution in market value of the home attributable to each defect caused individually by Appellants, and having determined that Appellants failed to present such evidence, we next examine whether the trial court abused its discretion in denying Appellants' request for a new trial to afford Appellants the opportunity to present diminution-in-value evidence. Based upon our review of the record, we discern no abuse of discretion on the part of the trial court in denying Appellants' request for a new trial limited to damages. Appellants had the opportunity, throughout the trial, to present evidence pertaining to any potential diminution in value of the home due to each defectively constructed

item. Appellants, however, elected not to present such evidence. Appellants' failure to present such evidence at trial does not entitle them to the proverbial "second bite of the apple" upon the entry of an adverse judgment. Consequently, Appellants' third issue lacks merit.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/30/2020